[Civil No. 3340.   Filed June 1, 1934.]

[33 Pac. (2d) 276.]

NATIONAL SURETY COMPANY, a Corporation, Appellant, v. E. P. CONWAY, Appellee.

Mr. Henderson Stockton and Mr. Emmett M. Barry, for Appellant.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld and Mr. Ivan Robinette, for Appellee.

LOCKWOOD, J.—E. P. Conway, hereinafter called appellee, in 1926 brought suit under chapter 22 of the Session Laws of 1921, against Charles W. Harris, as adjutant-general of the state of Arizona, and the National Surety Company, the latter hereinafter called appellant, which was the surety on the official bond of Harris. The complaint was based upon the alleged consenting to and conniving at by Harris of

the auditing of a claim against the state of Arizona which was not authorized by law. Following the requirements of the chapter, appellee filed a bond in the sum of $1,000 with appellee, as principal obligor, and with Harris, both individually and as adjutant-general, and the appellant herein as the obligees thereof. Issue was joined, and the case was tried to the court, which on the 27th of July, 1927, rendered the following judgment:

"It is by the court ordered and adjudged, that the plaintiff, E. P. Conway, take nothing by his complaint in said action; and

"It is further ordered and adjudged that the defendant, Charles W. Harris, individually, and Charles W. Harris, as Adjutant General of the State of Arizona, and the National Surety Company, a corporation, do each separately have and recover of and from the plaintiff, E. P. Conway, all damages sustained by said Charles W. Harris, individually, and and by said Charles W. Harris, as Adjutant General of the State of Arizona, and by the National Surety Company, a corporation, by reason of this suit and action of the plaintiff, the amount of which said damages shall be determined in and by an appropriate action or proceeding. . . . ''

No further proceedings were taken until February 25, 1929, when the appellant filed a petition to assess damages in accordance with the judgment above referred to. Thereafter Conway moved to dismiss the petition, and nearly three years later, on November 14, 1932, the motion was granted. From such order of the trial court this appeal was taken, and the record in this court was not finally completed so that we could consider the appeal until March 28, 1934. It will be seen that the parties cannot justly be accused of proceeding with undue haste.

The questions involved in this appeal are purely legal in their nature, the facts necessary for their determination being in no manner in dispute. We consider them in what seems to be their logical order.

The first is whether or not the bond given by appellee inures to the benefit of the appellant. It is contended by appellee that the action is statutory in its nature, and that the bond required of appellee, by the terms of the statute, cannot be taken advantage of by appellant. Chapter 22, Session Laws of 1921, reads as follows:

"Section 1. Whenever any public officer, or person holding or discharging the duties of any office or place of trust under the State, a part of whose duty is to audit, allow, or pay, or take part in auditing, allowing or paying, claims or demands upon the State, shall audit, allow or pay, or directly or indirectly, consent to, or in any way connive at, the auditing, allowance or payment of, any claim or demand against the State, which claim or demand is not authorized by law, such public officer or person, and the party or parties in whose favor such claim or demand shall have been made shall be responsible for all such sums of money, and twenty percentum additional thereon, to be recovered as follows:

"The attorney general is hereby empowered and it is hereby made his duty to institute suit in the name of the State against such public officer or officers and person or persons or any number of them to enjoin the payment of such money (or in case the same shall have been paid, then to recover the same), with twenty percent and lawful interests and costs, which shall be paid into the State Treasury to the credit of the fund from which the order of allowance was made, and the court shall give judgment accordingly, and for interest and costs as in other cases.

"Section 2. If the attorney general shall for sixty days after request made by any taxpayer of the State in writing, fail to institute such suit, then any taxpayer of the State may institute such suit in

his own name and at his own cost, with the same effect as if such suit had been brought by the attorney general; provided, the person or persons instituting such action or suit shall execute a bond with two or more good and sufficient sureties, made payable to the defendant or defendants in such suit or action, conditioned that if the plaintiff or plaintiffs in such action shall fail to prosecute such suit or action with diligence and to effect, that the plaintiff or plaintiffs will pay all damages sustained by the defendant or defendants by reason of such suit or action and all costs incurred therein. If any such taxpayer shall prevail in such suit the court shall allow such taxpayer costs and reasonable attorney fee not to exceed forty percent of the amount recovered or saved to the State as the case may be.''

It is of course true that this action rests solely on the statute, being unknown either to the common law or to equity. It therefore follows that no rights are conferred thereby that cannot reasonably be found in the statute. *Willy* v. *Mulledy,* 78 N. Y. 310, 34 Am. Rep. 536. On examining the chapter it appears that the substance may be stated briefly as follows, so far as it applies to the present action: Public officers who, directly or indirectly, in any way consent to, or connive at, the auditing of illegal claims against the state are responsible for all moneys paid on such claims, plus certain penalties. The Attorney General is authorized to bring suit against such public officers, and in such case the penalty is 20 per cent. of the principal sum, plus interest and costs, to be paid into the state treasury. If, however, the Attorney General refuses, after proper request, to bring the suit, any taxpayer may bring it, and if successful, in addition to the original sum, plus the 20 per cent., which the state recovers, the taxpayer is allowed for his trouble his costs and a 40 per cent. attorney's fee. But in order to prevent frivolous suits being brought by taxpayers, when such a suit is filed, the

taxpayer must execute a bond "made payable to the defendant or defendants in such suit or action, conditioned that if the plaintiff or plaintiffs in such suit shall fail to prosecute such suit or action with diligence and to effect, that plaintiff or plaintiffs will pay all damages sustained by the defendant or defendants by reason of such suit or action and all costs incurred therein." The question is, What is meant by the phrase "defendant or defendants"? It is contended by appellee that the only defendants specified by statute are the public officer and the parties in whose favor the illegal claim has been allowed, and that therefore the bondsmen of the officer are not proper parties defendant and do not come within the condition of the bond. We think appellee has overlooked the rule of law to the effect that all statutes are to be construed together. At the time chapter 22, *supra,* was adopted, paragraphs 197, 198 and 199, Revised Statutes of Arizona 1913, were in force and read as follows:

"197. Every official bond executed by an officer pursuant to law is in force and obligatory upon the principal and sureties therein for any and all breaches of the conditions thereof committed during the time such officer continues to discharge any of the duties of or hold the office, and whether such breaches are committed or suffered by the principal officer, his deputy, or clerk.

"198. Every such bond is in force and obligatory upon the principal and sureties therein for the faithful discharge of all duties which may be required of such officer by any law enacted subsequently to the execution of such bond, and such condition must be expressed therein.

"199. Every official bond executed by any officer pursuant to law is in force and obligatory upon the principal and sureties therein to and for the state of Arizona and to and for the use and benefit of all persons who may be injured or aggrieved by the

wrongful act or default of such officer in his official capacity; and any person so injured or aggrieved may bring suit on such bond, in his own name, without an assignment thereof.''

By virtue of these paragraphs, which were general in their terms, whenever a public officer failed to discharge any of the duties imposed upon him either at the time the bond was filed, or such as were imposed thereafter, his bondsmen were equally liable for such breach, and the bond inured to the benefit of all persons who might be injured or aggrieved by his act. The theory of chapter 22, *supra,* obviously is that a taxpayer is injured and aggrieved by the auditing and approval of a false claim. We are of the opinion, construing the statutes as a whole, that under chapter 22, *supra,* when the public officer becomes liable for the breach of duty described therein, his bondsmen are automatically liable also and are proper, if not necessary, parties to the action given against the officer. This has been assumed to be true as a matter of course, so far as we know, by all the parties in every suit of a similar nature which has reached this court. *Batterton* v. *Pima County,* 34 Ariz. 347, 271 Pac. 720. Appellee assumed that such was the law in the present instance, for he made appellant a party to this action, and thus compelled it to defend. We think that appellant was a proper party defendant under the terms of chapter 22, *supra,* and, such being the case, the bond inured to its benefit, as well as to the benefit of the public officer and the party receiving the money.

The next objection is that the bond is for the joint benefit of all the defendants, and that one of them, therefore, cannot bring an action thereon without bringing in the other obligees, either as parties plaintiff or defendant. If the interests of the obligees are joint, of course they must all be parties to proceed-

ings to enforce the penalty of the bond, and, if it were necessary to collect it in a separate action, we think they should be made parties thereto. But this appeal rests upon an attempt to enforce the penalty of the bond in the original action. The other obligees are already parties thereto, and have a right to be heard on any question that arises therein. We think, therefore, that, if the penalty of the bond can be enforced in the present proceeding, appellee may not object on the ground that the other obligees are not represented.

We therefore come to the third question: Had the trial court jurisdiction to entertain the motion to assess damages? It is the general rule that, where a statutory right is given, with a statutory remedy provided to enforce that right, the parties to whom the right is given are limited to the remedy provided by statute. *Globe Newspaper Co.* v. *Walker,* 210 U. S. 356, 28 Sup. Ct. 726, 52 L. Ed. 1096; *Roberts* v. *Landecker,* 9 Cal. 262; *Harrington* v. *Glidden,* 179 Mass. 486, 61 N. E. 54, 94 Am. St. Rep. 613. When, on the other hand, the right is statutory in its nature, but no specific method of enforcing it is provided, the parties may resort to such remedies as are provided by the general principles of law. *Pollard* v. *Bailey,* 20 Wall. 520, 22 L. Ed. 376; *Burson* v. *Cowles,* 25 Cal. 535; *Russell Mills* v. *County Commrs. of Plymouth,* 16 Gray (Mass.) 347. It is plain on examining chapter 22, *supra,* that the right to recover damages on the bond is given, but that no special method of enforcing that right appears. We think, therefore, we should resort to the general principles of law to determine how the condition of the bond should be enforced.

Appellant herein relies for support of its contention that the proper method is by appropriate pro-

ceedings in the original suit on the case of *Buggeln* v. *Cameron,* 11 Ariz. 200, 90 Pac. 324, which in its turn is based on the decision of the Supreme Court of the United States in *Russell* v. *Farley,* 105 U. S. 433, 445, 26 L. Ed. 1060. In the last-mentioned case the court says, after referring to cases cited disputing this power:

" . . . We are not satisfied that they furnish any good authority for disaffirming the power of the court having possession of the case, in the absence of any statute to the contrary, to have the damages assessed under its own direction. This is the ordinary course in the Court of Chancery in England, by whose practice the courts of the United States are governed, and seems to be in accordance with sound principle. The imposition of terms and conditions upon the parties before the court is an incident to its jurisdiction over the case; and having possession of the principal case, it is fitting that it should have power to dispose of the incidents arising therein, and thus do complete justice, and put an end to further litigation. We are inclined to think that the court has this power; and that it is an inherent power, which does not depend on. any provision in the bond that the party shall abide by such order as the court may make as to damages (which is the usual formula in England); nor on the existence of an express law or rule of court (as adopted in some of the States) that the damages may be ascertained by reference or otherwise, as the court may direct; this being a mere appendage to the principal provision requiring a bond to be taken, and not conferring the power to take one, or to deal with it after it has been taken. But whilst the court may have (we do not now undertake to decide that it has) the power to assess the damages, yet if it has that power, it is in its discretion to exercise it, or to leave the parties to an action at law. No doubt in many cases the latter course would be the more suitable and convenient one."

We later had a somewhat similar matter before us in *Sullivan* v. *Jones,* 13 Ariz. 229, 108 Pac. 476, 478, wherein we said:

" . . . We held, in *Buggeln* v. *Cameron* [11 Ariz. 200], 90 Pac. 324, that damages suffered by reason of the wrongful issuance of an injunction might be recovered in the injunction suit, upon proper supplemental pleadings and notice to the sureties upon the injunction bond. Until the court has passed upon the merits of the case, it is not made to appear that the injunction was wrongfully issued. Upon rendering judgment upon that issue, the court may hold the case open for the purpose of assessing damages, permit proper supplemental pleadings to be filed, and, upon such reasonable notice to the sureties as it may direct, try and determine the question of damages upon the issues raised by the supplemental pleadings; or, if the injunction bond is so conditioned as to permit, may leave the party to recover his damages in a separate action upon the bond."

Appellee, on the other hand, claims that the majority of the state courts hold that, in the absence of an express statutory authority, a court granting an injunction has no power on dissolution thereof to assess damages resulting from the wrongful issuance of the injunction, citing in support thereof the text of 22 C. J. 439, and many cases supporting the text. Whatever may be the holding of the majority of the state courts, we are of the opinion that the reasoning in *Russell* v. *Farley, supra,* followed by us in *Buggeln* v. *Cameron* and *Sullivan* v. *Jones, supra,* is in consonance with the modern trend toward the avoidance of a multiplicity of actions and the simplification of procedure. The court which has tried the principal case is generally in a far better position to determine the actual damages sustained by the defendant than is another court at a later time. Further, it will avoid the bringing of a new and separate proceeding with all the incidental expense and delay.

The necessary parties are already in the original case, or may be easily brought in by proper process. It may be urged that the decisions relied upon by us do not apply, for the reason that they were rendered when the original proceeding was an equitable one, and are based upon the powers of a court of chancery, while the case at bar is a special statutory proceeding, and not equitable in its nature. Such objection might have had some force under the old system of separate common-law and equity forums, actions, and procedure, but since the adoption in the last century of provisions now exemplified by sections 3746 and 3834, Revised Code of 1928, we think the principles laid down in *Pringle* v. *Hall*, 6 Ariz. 284, 56 Pac. 740, 741, prevail in this jurisdiction. Therein this court said, referring to the effect of the reformed procedure:

" . . . Pomeroy, in his work on Remedies and Remedial Rights (paragraph 76), says: 'The new system not only permits, but encourages, such a union and combination; for one of its elementary notions is that all the possible disputes or controversies arising out of or connected with the same subject-matter or transaction should be settled in a single judicial action.' In paragraph 77 he gives a classification of the combinations that may be made. The possible modes or forms of the union or combination by the plaintiff of legal and equitable primary rights and remedies in one suit are the following: (1) Both a legal and equitable cause of action may be alleged, and both a legal and equitable remedy obtained; (2) both legal and equitable causes of action may be alleged, and the single remedy obtained may be legal or equitable; (3) upon an equitable cause of action—that is, an equitable primary right alleged to have been invaded—a legal remedy may be obtained; (4) upon a legal cause of action—that is, a legal primary right alleged to have been invaded—an equitable remedy may be obtained; and (5) in an action purely legal—that is, where the primary rights

asserted to have been invaded and the remedy demanded are both legal—the plaintiff may invoke an equitable right or title in aid of his contention, and obtain his remedy by its means."

We see no reason why a court exercising both equitable and common-law jurisdiction, and directed to render such relief in its judgment as would give the party all the relief to which he might be entitled, either in law or equity, should not apply the principle above set forth in determining the damages accruing on any form of bond in the same suit in which the bond was given, unless there is some good reason or express statute to the contrary. We hold, therefore, that the trial court has jurisdiction, in its discretion, to assess the damages of appellant in this proceeding and to render judgment on the bond for such damages, or to relegate the appellant to a separate action on the bond.

Which course did the court follow? The judgment rendered in 1928 specifically stated that appellant was entitled to judgment against appellee for such damages as it had sustained by reason of the action, but did not fix their amount, and provided "the amount of which said damages shall be determined in and by an appropriate action or proceeding." It is the contention of appellant that this "appropriate action or proceeding" means supplemental proceedings in the original action, such as it attempted to institute by its petition to assess damages. It is the position of appellee that it refers to an independent suit. While the question is not without difficulty, we are of the opinion that the most natural construction to be placed on the language of the judgment is that the court intended the amount of the damages to be assessed by an independent and separate proceeding. This construction is borne out by the fact that this is the usual manner in which the penalty of a

bond is recovered, and the further fact that the court denied appellant's motion to assess the damages in the present action. In addition thereto, a contrary holding would raise many serious questions in regard to the nature and finality of the judgment. Since the matter was discretionary, we cannot say that the court erred in overruling the motion, and the order appealed from is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.