580 P.2d 360

**FOREMOST LIFE INSURANCE COMPANY, Appellant,**

v.

**J. N. TRIMBLE, as Director of Insurance of the State of Arizona, Appellee.**

**No. 1 CA–CIV 3621.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 4, 1978.

Rehearing Denied May 9, 1978.

Review Denied June 8, 1978.

Norling, Rolle, King & Oeser by George S. Livermore and John C. King, Phoenix, for appellant.

Bruce E. Babbitt, Former Atty. Gen. by J. Michael Low, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

HAIRE, Presiding Judge.

Appellant, Foremost Life Insurance Company, has appealed from a Maricopa County Superior Court judgment which upheld the refusal of the Director of Insurance to approve policy forms submitted by appellant for credit life insurance on loans or other credit transactions in excess of ten years duration. Before discussing the merits of the substantive issues raised by appellant, a jurisdictional issue raised by the Director must be considered.

The Director's order after hearing denying the request of Foremost for the approval of the policies involved was issued on October 17, 1975. Thereafter, Foremost filed its "Complaint (Unclassified Civil) Appeal from Hearing of Director of Insurance" in the Maricopa County Superior Court on October 28, 1975, without first seeking rehearing before the Director. Although not urged in the trial court, the Director now urges on appeal that the filing of a written request for rehearing, and the Director's denial thereof, is a jurisdictional prerequisite to appellant's right to appeal to the superior court. Since jurisdictional defects may be raised for the first time on appeal, *Bates & Springer of Arizona, Inc. v. Friermood*, 109 Ariz. 203, 507 P.2d 668 (1973); *Cooper v. Commonwealth Title of Arizona*, 15 Ariz.App. 560, 489 P.2d 1262 (1971), we will consider the alleged jurisdictional defect at this time.

A.R.S. § 20–164 E provides for rehearing in matters heard by the Director of Insurance, as follows:

"E. Upon written request of a party to a hearing being filed with the director within thirty days after any order made pursuant to a hearing has been mailed or delivered to the persons entitled to receive such order, the director may grant a rehearing or reargument of the matters involved in the hearing. Notice of such rehearing or reargument shall be given as provided in § 20–163."

A.R.S. § 20–166 grants a right of appeal to the superior court from the director's orders and sets forth in detail the procedures governing such appeals. Subsection 20–166 A is pertinent to the jurisdictional issue raised by the Director, and reads as follows:

"A. An appeal from the director shall be taken only from an order on hearing or an order refusing a hearing. *A person aggrieved by any such order may, within thirty days after the order has been mailed or delivered to the persons entitled to receive it, or within thirty days after the director's order denying rehearing or reargument has been so mailed or delivered, appeal from such order on hearing* or such order refusing a hearing by petition to the superior court for Maricopa county. A copy of such petition shall also forthwith be served upon the director and other parties in interest, if any, and the director shall thereupon certify and file in such court a transcript of the record of such hearing and a copy of the order appealed from." (Emphasis added).

It would appear that the emphasized language of § 20–166 A clearly allows an appeal to the superior court from the Director's order made following a hearing without the necessity of a rehearing. Also, if a rehearing has been requested, then an appeal may be made within 30 days after the Director's order denying rehearing.

Notwithstanding the seeming clarity of § 20–166 A, the Director, referring to § 20–165 B, contends that the phrase "order on hearing" as used in subsection 20–166 A refers only to an order made after rehearing.

A.R.S. § 20–165 B provides:

"B. Within thirty days after termination of the hearing or of any rehearing thereof or reargument thereon, *the director shall make his order on the hearing, covering matters involved in such hearing and in any rehearing or reargument thereof,* and shall give a copy of such order to the same persons given notice of the hearing." (Emphasis added).

We reject the Director's argument that the above-emphasized portion of § 20–165 B was intended as a technical definition of the phrase "order on hearing" so as to make that phrase applicable only when the order includes the disposition of a rehearing. To adopt such a construction would require that we ignore the initial language of § 20–165 B which unambiguously indicates that the phrase "order on the hearing" applies equally to the Director's order made "[w]ithin thirty days after termination of the hearing" *or* to the order made "[w]ithin thirty days after . . . any rehearing thereof or reargument thereon." When considered together, the provisions of A.R.S. §§ 20–165 and 20–166 clearly and unambiguously demonstrate a legislative intention to allow an appeal to the superior court without requiring as a prerequisite a request for rehearing before the Director.

We recognize, as urged by appellee, the general policy of the law which requires that one first exhaust all available administrative remedies before seeking appellate redress in the court system. *See Mountain*

*View Pioneer Hospital v. Employment Security Commission,* 107 Ariz. 81, 482 P.2d 448 (1971); *Stevens v. Industrial Commission,* 104 Ariz. 293, 451 P.2d 874 (1969); *Campbell v. Chatwin,* 102 Ariz. 251, 428 P.2d 108 (1967). Appellee also places great reliance in the policy considerations discussed in our decision in *Herzberg v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976), a case involving an appeal from a determination made by the State Real Estate Commissioner, wherein he stated:

"If a rehearing procedure is provided, either by statute or rule, a party aggrieved by an administrative decision must avail himself of such administrative review remedy as a condition precedent to judicial review.

\*      \*      \*      \*      \*      \*

"The purpose of such rehearing provision is to afford the Commission the first opportunity to correct its own mistakes, thereby eliminating or minimizing subsequent appeals and relitigation."

27 Ariz.App. at 419, 555 P.2d at 678. However, the appeal in *Herzberg v. David, supra,* was governed by the provisions of the Administrative Review Act (A.R.S. §§ 12–901 to 12–914) which is not applicable to an appeal from an order issued by the Director of Insurance. We have specifically addressed this question in *Herzberg v. State ex rel. Humphrey,* 20 Ariz.App. 428, 513 P.2d 966 (1973), wherein we held that inasmuch as A.R.S. § 20–166 provides for judicial review and establishes a definite procedure for such review, the provisions of the Administrative Review Act are not applicable to appeals from orders entered by the State Director of Insurance.

General policies of the law must give way when faced with conflicting express legislative enactments. Here the statutes unambiguously grant a right of appeal from an order of the Director made after hearing, without the necessity of any request for rehearing. Such right being expressly granted by statute, it may not be abrogated by any act of the Director or by any general policy considerations.

We conclude that the Maricopa County Superior Court had jurisdiction to consider appellant's timely filed appeal from the Director's order after hearing, and we therefore proceed to a consideration of the substantive issues involved.

The issue presented to this Court was initiated when appellant, by written application, sought permission from the Director to write credit life insurance for loans in excess of ten years duration. In its application appellant indicated that it proposed to use policy forms which had already been filed and approved by the Director's office (pursuant to the provisions of Title 20, Chapter 6, Article 10, Arizona Revised Statutes) in connection with credit life insurance for loans not in excess of ten years.

The Director issued his order disapproving the application, based upon an opinion of the Arizona Attorney General which held that A.R.S. §§ 20–1601 and 1602 prohibited the writing of credit insurance on loans or other credit transactions of more than ten years duration.

Thereafter, pursuant to A.R.S. § 20–161, the Director set the matter for hearing. After hearing, the Director entered his order on the hearing, again denying appellant's application, for the reasons stated in his initial order of disapproval.

As we have previously stated, the Director's order on the hearing was timely challenged by the filing of appellant's complaint in the Maricopa County Superior Court. In the trial court, the defendant-director's motion for summary judgment, based upon the pleadings and an affidavit of Earl T. Nagel, the Deputy Director of the Arizona Department of Insurance, was granted, thereby in effect resulting in an affirmance of the Director's prior orders disapproving appellant's application.[1]

The ultimate issue thus presented to this Court is whether the Director erred in refusing to approve appellant's application for permission to write credit life insurance in excess of ten years duration on policy forms previously approved by the Director for such insurance having a duration of ten years or less.

Article 10 of Chapter 6, consisting of §§ 20–1601 to 20–1616, is entitled "Credit Life Insurance and Credit Disability Insurance", and was enacted as a part of Title 20 of Arizona Revised Statutes in 1961. Article 10 provides a very detailed regulatory scheme for the types of insurance which come within its purview. Credit life insurance and credit disability insurance are defined. A.R.S. § 20–1603. Permissible kinds of individual and group transactions are described. A.R.S. § 20–1604. Maximum levels of coverage are specified. A.R.S. §§ 20–1605 and 20–1606. Necessary provisions within policy forms and certificates are prescribed. A.R.S. § 20–1608. The Director's authority to approve the use of policy forms and certificates is contained in A.R.S. § 20–1609. The requirement for filing a schedule of premium rates, and for the Director's review and approval of such rates, is provided by A.R.S. § 20–1610. Finally, group credit life and disability insurance, within the meaning of the Act, can be marketed through a creditor or lender who need not be licensed as an insurance agent or solicitor. A.R.S. § 20–1612 B.

Although it is stated in § 20–1601 that the purpose of Article 10 is to provide "comprehensive regulation of the issuance and transaction of *all* credit life insurance and credit disability insurance" (emphasis added), the immediately following section provides, in pertinent part, that:

"*All life insurance and all disability insurance issued or made effective in connection with a loan or other credit transaction of not more than ten years duration shall be subject to this article* and to all other provisions of this title not inconsistent herewith except that an insurer's issuance of any such insurance as an isolated transaction, not pursuant to an

---

1. Appellant also filed a motion for summary judgment, which was denied. Review in the superior court is *de novo* (see A.R.S. § 20–166 C), and both parties agree that disposition by summary judgment was appropriate in that there are no genuine issues of material fact, the sole question involved being one of law.

agreement or a plan insuring debtors of the creditor, shall not be subject to this article." § 20–1602 (emphasis added).

■ To the extent that there is any conflict between these two sections, we hold that § 20–1602 is clear and unambiguous, and must be considered as controlling over § 20–1601, which constitutes the purpose or policy section of Article 10. *See Sakrison v. Pierce*, 66 Ariz. 162, 185 P.2d 528 (1947). We therefore hold that Article 10 is limited to insurance issued in connection with credit transactions of not more than ten years duration, and neither regulates, permits, nor prohibits life or disability insurance issued or made effective in connection with loan or credit transactions of more than ten years duration. In so holding, we necessarily reject the Director's primary contention that, notwithstanding the clear language in § 20–1602 which limits the application of Article 10 to insurance involving credit transactions of not more than ten years duration, the use of the word "all" in § 20–1601 constitutes an implied prohibition against credit life and disability insurance concerning transactions in excess of ten years. However, our disagreement with the Director may be more semantical than actual, since we note that in subsequent portions of the Director's brief the Director acknowledges that Article 10 does not prohibit credit life insurance of more than ten years duration, stating:

"Foremost is *not* being prohibited from writing life insurance in connection with a credit transaction in excess of ten years duration (like so-called 'mortgage' insurance) so long as that insurance business comports with other applicable provisions of the Insurance Code."

■ From the foregoing it can be seen that the essence of the Director's argument is that Article 10 prohibits credit life and disability insurance in excess of ten years duration only in the sense that an issuer of insurance of such duration is prohibited from claiming the benefits resulting from

the detailed statutory scheme set forth in Article 10. We agree with the Director's position in that regard. The legislature has seen fit to enact Article 10 as a complete regulatory scheme relating to credit insurance falling within the durational limits set forth in § 20–1602. Obviously, there may be a need for a type of insurance in connection with credit transactions extending beyond that durational limit, such as decreasing term life insurance (sometimes called "mortgage insurance"). Article 10 neither regulates, permits, nor prohibits such insurance, and more importantly insofar as concerns the issues involved in this case, it does not create any kind of an implied exemption of such insurance from the general statutory and regulatory requirements otherwise imposed by the insurance code and applicable laws of the state of Arizona. We reject appellant's contention that by calling such insurance "credit insurance" somehow an exception is created as to otherwise applicable laws of the state of Arizona regulating life insurance.

As we have previously noted, appellant's application to the Director indicated its intention to utilize policy forms already filed with and approved by the Director in connection with Article 10, therefore at least impliedly indicating an intention to take advantage of the marketing and other benefits inherent in the utilization of the credit life insurance regulatory scheme set forth in Article 10.[2] There is some indication in appellant's reply brief filed in this appeal and in counsel's answers to questions from the Court at oral argument that appellant now takes the position that in its application it did not envision the utilization of any benefits pursuant to Article 10 nor any exemption from other provisions of the insurance code and regulations generally applicable to the issuance of life insurance. To the extent that these contentions are now raised on this appeal, we find nothing in the record indicating that they were raised before either the Director or the trial

---

2. The actual policy forms have not been made a part of the record in the trial court litigation nor of the record on this appeal.

court. In any event, we find the record submitted on this appeal insufficient to enable us to determine whether, in the light of such contentions, appellant's application was improperly denied.

The judgment entered by the trial court is therefore affirmed.

FROEB, C. J., and NELSON, J., concur.