991 P.2d 231

Janette CRONIN and Bruce Cronin,
wife and husband, Petitioners.

v.

The Honorable Steven D. SHELDON,
Judge of the Superior Court of the State
of Arizona, in and for the County of
Maricopa, Respondent.

and

Denny's Restaurants, Inc. and Herbert
Eckhardt and Jane Doe Eckhardt, his
Wife, Real Parties In Interest.

Linda Finley, Petitioner.

v.

The Honorable John H. Seidel, Judge of
the Superior Court of the State of Ari-
zona, in and for the County of Maricopa,
Respondent Judge,

Calvary Rehabilitation Center,
Real Party in Interest.

Nos. CV–98–0495–SA, CV–98–0580–SA.

Supreme Court of Arizona,
En Banc.

Dec. 17, 1999.

Margrave Celmins, P.C. by Brownell K. Boothe, Bruce C. Smith and Langerman Law Offices, P.A. by Amy G. Langerman, Adrienne K. Wilson, Phoenix, Attorneys for Petitioners Cronin.

Snell and Wilmer by Lisa M. Coulter, Tibor Nagy and DeConcini, McDonald, Yetwin & Lacy by Jeffrey R. Simmons Attorneys, Phoenix, for Real Party in Interest Denny's Restaurants, Inc.

Jennings, Strouss & Salmon by Glenn J. Carter, John J. Egbert, Phoenix, Attorneys for Amici Curiae Goodyear Tire and Rubber Company and Southwest Gas Corporation.

Langerman Law Offices, P.A. by Amy G. Langerman, Adrienne K. Wilson, Phoenix, Attorneys for Petitioner Finley.

Lewis and Roca by Susan M. Freeman, Jane E. Reddin, Stephanie M. Cerasano, Phoenix, Attorneys for Real Party in Interest Calvary Rehabilitation Center.

## OPINION.

JONES, Vice Chief Justice.

¶1 Petitioners Janette Cronin (Cronin) and Linda Finley (Finley) bring separate actions against their respective employers, Denny's Restaurants, Inc. (Denny's) and Calvary Rehabilitation Center (Calvary). We have consolidated the two cases because in relevant part they involve the same issue: Whether a cause of action alleging the tort of wrongful termination in violation of the public policy set forth in the Arizona Civil Rights Act (ACRA), A.R.S. §§ 41-1401 to -1492 (1999), may be constitutionally restricted to ACRA's statutory remedies by the exclusive remedies provision of the Employment Protection Act (EPA), A.R.S. § 23-1501(3)(b)(i) (Supp.1998). The state legislature enacted ACRA in 1965 and substantially amended it in 1974. The EPA was enacted in 1996.

### I. Special Action Jurisdiction

¶2 We accept special action jurisdiction pursuant to Rule 4(a), Rules of Procedure for Special Actions, but we emphasize that "[d]irect filing in [the Supreme Court] is exceptional...." *Green v. Superior Court,* 132 Ariz. 468, 470, 647 P.2d 166, 168 (1982). The sole issue before us is one of law and of statewide significance, affecting employees and employers throughout Arizona. *See Denton v. Superior Court,* 190 Ariz. 152, 154, 945 P.2d 1283, 1285 (1997); *Arizona Dep't of Pub. Safety v. Superior Court,* 190 Ariz. 490, 493-94, 949 P.2d 983, 986-87 (App.1997).

¶3 Moreover, the cases at bar raise an issue of first impression. *See Vo v. Superior Court,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992). The constitutionality of the EPA has been challenged on various grounds in both the federal and state courts, and numerous published articles express differing points of view. The potential exists that trial courts may produce conflicting results, *see Denton,* 190 Ariz. at 154, 945 P.2d at 1285; *Valler v. Lee,* 190 Ariz. 391, 392, 949 P.2d 51, 52 (App.1997), and the question of constitutionality now demands consistent, statewide application.

¶4 Though we accept jurisdiction, we reject petitioners' jurisdictional arguments.

We disagree that under Special Action Rule 3(c), the trial courts acted arbitrarily, capriciously, or otherwise abused their discretion in upholding the constitutionality of the EPA. On the contrary, the trial courts did not ignore the law, but rather applied the EPA, presumptively a valid statute, to bar petitioners' wrongful discharge tort claims.

¶5 Nor do we agree that, pursuant to Special Action Rule 1(a), petitioners are afforded no equally plain, speedy and adequate remedy by appeal. *See Purcell v. Superior Court,* 172 Ariz. 166, 169, 835 P.2d 498, 501 (App.1992). While petitioners ultimately have an avenue of appeal available, such availability "does not foreclose the exercise of [an appellate] court's discretion to accept jurisdiction." *Arizona Dep't of Pub. Safety,* 190 Ariz. at 493, 949 P.2d at 986.

¶6 Accordingly, we take jurisdiction to decide the constitutional issue. Jurisdiction is predicated on article 6, § 5(3) of the Arizona Constitution and Special Action Rule 4(a).

## II. Facts & Procedural History

### A. Cronin's Claim

¶7 Petitioner Janette Cronin was employed as manager of a Denny's restaurant from March 19, 1993, until her discharge on July 3, 1996. During three years as manager, Cronin reported to Herbert Eckhardt, who, according to the complaint, propositioned her persistently and made inappropriate sexual remarks. Cronin claims Eckhardt's behavior continued despite her protests. She further alleges she was paid less than her male counterparts for a job requiring the same skills, efforts and responsibilities, and was singled out to train younger, less experienced male managers who were subsequently paid higher wages than she. Cronin also alleges she was assigned menial job duties by Eckhardt because of her sex, including the task of office cleaning.

¶8 In May 1996, Cronin informed Peter Trimble, Denny's human resources representative, of her complaints against Eckhardt. She alleges Trimble refused or otherwise failed to rectify the hostile workplace and refused to address her pay-disparity concerns. On May 15, Cronin went to the United States Equal Employment Opportunity Commission (EEOC) to charge Eckhardt and Denny's with sexual harassment and discrimination. Because of this action, Cronin claims Eckhardt gave notice she would be fired. Cronin was in fact fired on July 3, 1996, ostensibly for violating Denny's alcoholic beverage service policy. She alleges the firing was pretextual—that in reality she was terminated in retaliation for asserting the EEOC charge. Cronin claims that while she did permit an underage employee to serve alcohol, this practice was common at Denny's and had been regularly permitted by Eckhardt and by the company.

¶9 On May 12, 1998, Cronin filed this action in superior court against Denny's and against Herbert and Jane Doe Eckhardt alleging several counts, including Count VII, a tort claim for wrongful termination in violation of public policy. Thereafter, she withdrew Count VII against Eckhardt, leaving the claim in place only as to Denny's. Denny's moved to dismiss Count VII on the ground that the EPA precluded Cronin's separate claim for wrongful discharge, and Cronin responded that the EPA is unconstitutional. The court granted Denny's motion. Cronin then filed the instant petition with this court, again asserting the EPA's unconstitutionality.

¶10 As a threshold issue, Denny's maintains that Cronin is procedurally barred by the statute of limitations from prosecuting Count VII of her complaint. On the date Cronin was terminated, wrongful termination claims in Arizona were governed by the two-year statute of limitations set forth in A.R.S. § 12–542 (1992). The legislature, however, shortened the statutory period to one year, effective July 20, 1996. *See* A.R.S. § 12–541(4) (Supp.1998). Denny's argues, pursuant to A.R.S. § 12–505(C) (1992),[1] that the

---

1. A.R.S. § 12–505(C) provides:
   If an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within

shorter period applies to bar Cronin's wrongful termination action and urges this court to dispose of the action now, to avoid the futility of returning Cronin's claims to the trial court to produce the same result. We decline to rule on the limitations question because certain aspects are unique to this case, and the trial court, having not yet addressed the matter, should be the first to deal with possible factual issues relative to the period of limitations.

### B. Finley's Claim

¶ 11   Petitioner Finley was employed as a family therapist for Calvary from 1989 until her discharge on March 6, 1998. Finley alleges that despite her years of solid performance and consistently excellent evaluations, her termination by Calvary was retaliatory, prompted by the fact that she had previously reported her supervisor, Dr. John Stapert, for sexual harassment. Calvary claims the termination was for poor work performance.

¶ 12   Finley claims the situation began in the fall of 1997 with the hire of Stapert. Stapert is alleged to have directed sexually inappropriate conduct toward her, as well as toward other female employees and clients. Finley first reported Stapert's behavior to Calvary's executive director, Jeff Shook, in January 1998 and attempted numerous times thereafter to resolve the situation. Finley asserts she was recommended for termination by Stapert and was fired by reason of her complaints about Stapert's inappropriate behavior.

¶ 13   In June 1998, after her discharge, Finley filed a discrimination and harassment claim with the Arizona Civil Rights Division and the EEOC and subsequently received a right to sue letter. On July 17, Finley filed the instant action in superior court, alleging, *inter alia,* wrongful termination in violation of public policy and discrimination based on retaliation.

¶ 14   Calvary, like Denny's, invoked the affirmative defense that the EPA should operate to bar Finley's tort claim for wrongful discharge. Finley urged the invalidity of the statute.   On cross-motions for summary

judgment directly addressing the constitutionality of the EPA, the trial court found the statute did not violate the Arizona Constitution and granted Calvary summary judgment on the wrongful discharge count. Finley thereafter filed the present petition for special action with this court, accompanied by a motion to consolidate *Finley* with *Cronin.* We accepted jurisdiction and granted the motion.

### C. · Holding and Constitutional Determination

¶ 15   We now hold that tort claims alleging wrongful termination in violation of the public policy set forth in ACRA are subject to legislative restriction and may be constitutionally limited to the exclusive remedies set forth in the statute. As such, we affirm the constitutionality of the challenged provisions of the EPA and uphold the superior court's judgment of dismissal against Cronin and the summary judgment against Finley on their respective wrongful discharge claims.

### III. Discussion

### A. The Statutory Scheme

¶ 16   An "employer" under ACRA is defined as one with fifteen or more employees, or, in the case of sexual harassment, a person who has one or more employees. *See* A.R.S. § 41–1461(2). It is undisputed that petitioners' employers, Denny's and Calvary, fall under ACRA's definition of "employer," and further, that Cronin's and Finley's complaints allege wrongs protected by ACRA. ACRA operates on this record as the governing public policy statute.

¶ 17   With the 1996 passage of the EPA, the legislature limited plaintiffs to three avenues of relief for claims asserted against employers on the theory of wrongful discharge. The EPA permits such employee claims if: (a) the discharge was in violation of an employment contract, (b) the discharge violated a statute of this state, or (c) the discharge was in retaliation for the employee's assertion of certain rights protected by state law. The second of these, wrongful termination in violation of a state statute—

one year from the time the new law takes      effect, and not afterward.

ACRA—is at issue in the instant cases. Petitioners' tort claims thus fall squarely within the regulatory scheme contemplated by the EPA.

¶ 18 The relevant section of the EPA, A.R.S. § 23–1501(3)(b), states that an employee may assert a claim for wrongful termination if:

> The employer has terminated the employment relationship of an employee in violation of a statute of this state. If the statute provides a remedy to an employee for a violation of the statute, **the remedies provided to an employee for a violation of the statute are the exclusive remedies** for the violation of the statute or the public policy set forth in or arising out of the statute, including the following:
>
> (i) The civil rights act [ACRA] prescribed in title 41, chapter 9.
>
> . . . .
>
> All definitions and restrictions contained in the statute also apply to any civil action based on a violation of the public policy arising out of the statute. **If the statute does not provide a remedy to an employee for the violation of the statute, the employee shall have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute.**

*Id.* (Emphasis added.)

¶ 19 This legislation, according to the legislative preamble inserted ahead of the statutory text, purports to respond to this court's decision in *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025 (1985), where we first approved a tort cause of action for wrongful termination in violation of public policy. *See* Employment Protection Act Ch. 140, § 1, para. A, 1996 Ariz. Sess. Laws 683, 684. The preamble errs, however, because the exclusive remedies provision of the EPA restricting wrongful discharge claims based on ACRA is not applicable to *Wagenseller.* The public policy on which *Wagenseller* was predicated stemmed not from ACRA but from the Arizona criminal statute dealing with indecent exposure, A.R.S. § 13–1402 (1989). The indecent exposure law prescribes no separate civil remedy, thus placing *Wagenseller*-type claims within the permissive scope of the statute. Accordingly, neither the rationale nor the holding in *Wagenseller* is implicated by the EPA or by today's opinion.

¶ 20 Rather, the EPA more directly addresses the court of appeals' decision in *Broomfield v. Lundell,* 159 Ariz. 349, 767 P.2d 697 (App.1988), an ACRA-based public policy case which held that even though ACRA expressly prescribes its own statutory remedies, a plaintiff is nonetheless entitled to assert a separate cause of action in tort alleging employment discrimination pursuant to the statute. In short, *Broomfield* held that the tort remedy for wrongful termination is maintainable in addition to remedies provided in the statute. *See id.* at 354–57, 767 P.2d at 702–05.

¶ 21 *Broomfield* acknowledged this court's earlier holding in *Register v. Coleman* that "[w]hen a statute creates a right and also creates a remedy for the right created, the remedy thereby given is exclusive," 130 Ariz. 9, 14, 633 P.2d 418, 423 (1981), but nonetheless reasoned that there was no state preemption of the separate tort claim because ACRA did not purport to grant an exclusive remedy, and the court could· act, pursuant to its common law power, to fill the perceived legislative void. *See Broomfield,* 159 Ariz. at 356–57, 767 P.2d at 704–05. Accordingly, the *Broomfield* court, addressing ACRA as the public policy predicate for wrongful discharge, found no statutory preclusion and held that the plaintiff could assert an independent wrongful discharge action in tort. *See id.*

¶ 22 The legislature has now filled the void identified by *Broomfield* with the exclusive remedies provision of the EPA which states, in the simplest terms, that since ACRA provides its own remedy for wrongful termination, such remedy becomes the exclusive remedy for an ACRA violation. As a consequence, *Broomfield* is no longer controlling authority because it has been mooted by the legislature, virtually at the invitation of the authoring court.

¶ 23 As in *Broomfield,* ACRA forms the basis for the public policy claims in the instant cases. The difference here is that the

EPA, enacted subsequent to *Broomfield,* now restricts ACRA-based remedies to those provided by the statute. ACRA provides that an employee discharged for reasons that violate the statute may receive back pay, attorneys' fees, reinstatement or "any other equitable relief as the court deems appropriate." A.R.S. § 41–1481(G), (J). ACRA does not provide compensatory damages for discriminatory conduct, for loss of earning capacity, or for punitive damages, all of which are now precluded by the EPA in ACRA-based claims.

¶ 24  Petitioners ask that the EPA be declared unconstitutional so that they, like the plaintiff in *Broomfield,* may bring common law tort claims for wrongful discharge independent of the statutory relief expressly provided by ACRA. Their ultimate argument is that the EPA violates the Arizona Constitution because it impermissibly abrogates the right of wrongful discharge victims to assert tort actions and limits remedies to those provided in the statute.

### B.  The Constitutionality of EPA

### 1.  The Preamble

■ ¶ 25  Petitioners' first contention is that the preamble to the EPA violates the separation of powers clause of the Arizona Constitution. Ariz. Const. art. 3. In relevant part, the preamble provides:

C.  ... When the legislature adopted the common law to provide the courts with laws of reference, it did not intend to vest the courts with the authority to establish new causes of action or to independently set forth the public policy of the state....

D.  It is the intent of the legislature to establish that the courts cannot create new causes of action. Courts can apply common law causes of action to cases they adjudicate provided that they do not expand, modify or in any manner whatsoever alter the common law causes of action that were adopted by the legislature pursuant to Arizona Revised Statutes section 1–201.

Employment Protection Act, Ch. 140, § 1, para.  C & D, 1996 Ariz. Sess. Laws 683, 684.

■ ¶ 26  The quoted language would leave the Arizona courts with no authority to develop, modify, or expand the common law. Law in Arizona would become uniquely statutory. Declaring that "courts are established to adjudicate cases by applying the laws enacted by the legislature to the facts of those cases," *id.,* para. C, and that the adoption of the common law at the time of statehood was merely to provide courts with laws of reference, but "not ... to vest the courts with the authority to establish new causes of action," *id.,* the legislature boldly, though erroneously, asserts that this court was without constitutional authority to render its decision in *Wagenseller. See id.* We reject such assertion as constitutionally infirm. Courts do make law. *See* A.R.S. §§ 1–201 (1995), 12–122 (1992). The common law is and has been a product of the courts for hundreds of years. To adopt the common law is, by definition, to adopt the plenary role of the judiciary in its continuing development.

■ ¶ 27  Courts also participate in the development of public policy. *See Wagenseller,* 147 Ariz. at 378, 710 P.2d at 1033; *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983) (courts make public policy, though "subject to legislative correction").

¶ 28  The petitioners, citing *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 641 P.2d 1275 (1982), *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), urge that we declare the EPA unconstitutional because legislation based on the thoroughly unconstitutional purpose expressed in the preamble must itself be declared unconstitutional. We reject this argument as well. *Chevron* simply holds, we think correctly, that the judiciary has the power to declare existing law while the legislature has the authority to enact laws. *Washington* holds that a verbal skills test which disparately impacted a particular minority group was not unconstitutional on that basis alone. *Employment Division* suggests that a facially neutral statute may offend the constitution if it unduly burdens religion. None of these cases supports petitioners' broad assertion that because a legislative preamble sets forth notions repugnant

to the constitution, the operative legislation itself is necessarily invalid.

¶ 29  To the contrary, the constitutionality of the EPA is not dependent on the preamble because the preamble is not statutory text. *See Sakrison v. Pierce*, 66 Ariz. 162, 172–73, 185 P.2d 528, 535 (1947); *Foremost Life Ins. Co. v. Trimble*, 119 Ariz. 222, 226, 580 P.2d 360, 364 (App.1978) (citing *Sakrison*, that where an unambiguous operative statutory section conflicts with the purpose or policy section of a statute, the operative section controls); 1A Norman J. Singer, *Statutes and Statutory Construction*, § 20.04 (5th ed.1992).

¶ 30  The preamble is devoid of operative effect.  Unfortunately, it manifests the legislature's intent to usurp judicial authority in violation of the separation of powers doctrine set forth in article 3 of the Arizona Constitution.  The tri-partite separation of co-equal governmental powers among the legislative, executive, and judicial branches is a doctrine profoundly rooted in the constitutions of all fifty states, as well as in the Constitution of the United States.  The judicial power in particular was defined by then Chief Justice Marshall early in the history of the Republic: "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S.(1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

¶ 31  The judicial power is not dependent on the legislative branch.  The judicial mandate, intended to secure equal and substantial justice under the rule of law, is delegated to the judiciary by the constitution, not the legislature.  The preamble would limit the mandate by restricting the judicial power—a constitutional power sometimes neglected in the unpredictable maelstrom of partisan politics.

¶ 32  The EPA preamble is patently unconstitutional.  It demonstrates a fundamental misapprehension of law.  It expresses notions abandoned by the founding fathers more than two centuries ago during the constitutional debates at Philadelphia.  *See* THE FEDERALIST No. 81 (Alexander Hamilton).  Importantly, the preamble is not law and thus does not of itself invalidate the statutory language of the EPA. We therefore disregard the preamble in its entirety and attend to the constitutionality of the statute itself.

## 2.  The Anti-abrogation Clause

¶ 33  Petitioners argue that claims for wrongful termination in violation of public policy are protected by article 18, § 6 of the Arizona Constitution, the "anti-abrogation" clause:

> The *right of action* to recover damages for injuries shall never be abrogated. . . .

(Emphasis added.)

¶ 34  We have held that article 18, § 6 precludes *abrogation*, but not *regulation*. *See Barrio v. San Manuel Div. Hosp.*, 143 Ariz. 101, 104, 692 P.2d 280, 283 (1984); *Kenyon v. Hammer*, 142 Ariz. 69, 74, 688 P.2d 961, 966 (1984).  However, it is settled that we reach the abrogation question only if the cause of action at issue is in fact protected by article 18, § 6. *See Ruth v. Industrial Comm'n*, 107 Ariz. 572, 575, 490 P.2d 828, 831 (1971).  The first question, therefore, is whether constitutional anti-abrogation will protect the public policy cause of action in tort which the EPA expressly restricts. Stated more particularly, does article 18, § 6 of the constitution prevent the EPA's elimination of public policy tort claims where the policy which forms the basis for the claims traces its origin to the legislative enactment of ACRA and to no other source?

¶ 35  This court has held that article 18, § 6 is an " 'open court' guarantee intended to constitutionalize the right to obtain access to the courts. . . ." *See Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 13, 730 P.2d 186, 190 (1986) (citing *Barrio*, 143 Ariz. at 105, 692 P.2d at 284; *Kenyon*, 142 Ariz. at 73–75, 79–83, 688 P.2d at 965–67, 971–75).  The language of the provision is to be construed broadly and unrestrictively. *See Boswell*, 152 Ariz. at 13, 730 P.2d at 190. As such, article 18, § 6 prevents abrogation of all common law actions for negligence, intentional torts, strict liability, defamation, and other actions in tort which trace origins to the common law.  When we considered the scope of anti-abrogation in *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861

P.2d 625 (1993), we overruled *Bryant v. Continental Conveyor & Equipment Co.*, 156 Ariz. 193, 751 P.2d 509 (1988), and dispensed with the narrow analysis there enunciated, that article 18, § 6 did not protect a right of action for injuries occurring at a time subsequent to expiration of the twelve-year statute of repose following the sale of a defective product. *Hazine* declared unconstitutional the same statute of repose that *Bryant* upheld.

¶ 36  What we did *not* do in *Hazine*, however, is extend constitutional protection to all tort causes of action, whenever or however they may have arisen. The statute in *Hazine* provided that no products liability action could be commenced if the cause of action accrued more than twelve years after the product was first sold. We declared the statute unconstitutional not simply because it abrogated the right of action to recover for injuries even before the cause of action arose, *see Hazine*, 176 Ariz. at 344, 861 P.2d at 629, but also because a right of action for injuries caused by defective products *was* recognized at common law, long before Arizona's constitution was established.

■■■ ¶ 37  Conversely, a tort claim alleging wrongful discharge in violation of the ACRA-based public policy is strictly statutory and thus not within the *Hazine* doctrine. Such a claim neither existed in 1912 when statehood was achieved, nor did it evolve from common law antecedents. The common law gave no protection to employees or others against discrimination based on race, age, or gender and recognized no such right.

¶ 38  Petitioners nevertheless make the argument that because claims for "wrongful termination" were recognized at English common law as early as 1562, the common law adopted by Arizona at the time of statehood must include this cause of action. *See Patterson v. Connolly*, 51 Ariz. 443, 445, 77 P.2d 813, 814 (1938) ("the common law of Arizona included the English common law as amended by statute down to the time of the severing of the union between the colonies and the mother country"); *Masury & Son v. Bisbee Lumber Co.*, 49 Ariz. 443, 68 P.2d 679 (1937) (English common law rules regarding limitation of actions are the law of Arizona,

except as modified by statute). The petitioners' reasoning is flawed, however, as it assumes the English cause of action was the pre-statehood genesis of the present tort action for wrongful discharge. We emphasize that this is not the case for the reason that American courts abandoned the English rule in favor of "at-will" employment during the Industrial Revolution, long before Arizona achieved statehood. *See Wagenseller*, 147 Ariz. at 375, 710 P.2d at 1030.

■■■ ¶ 39  In sum, pursuant to the *Hazine* analysis, the anti-abrogation clause applies only to tort causes of action that either existed at common law or evolved from rights recognized at common law. We hold that the anti-abrogation clause is not implicated by the EPA because the cause of action which it allegedly abrogates—wrongful termination in violation of public policy expressed in ACRA—originates exclusively within the statute, would not otherwise exist, and cannot trace its antecedents to a common law right of action. *See Alabam's Freight Co. v. Hunt*, 29 Ariz. 419, 242 P. 658 (1926).

### 3. The Non–Limitation Clauses

¶ 40  Though ACRA-based wrongful termination is not afforded constitutional protection under anti-abrogation, petitioners argue that the EPA nevertheless violates the constitution's "non-limitation" provisions—article 2, § 31 and the second phrase of article 18, § 6—by limiting wrongful discharge claims to the remedies set forth in the statute. *See* A.R.S. § 23–1501(3)(b).

¶ 41  Constitutional non-limitation provisions prohibit the imposition of a statutory limit on the *amount* recoverable in actions for damages. Article 2, § 31 provides:

> No law shall be enacted in this State limiting the ***amount of damages to be recovered*** for causing the death or injury of any person.

(Emphasis added.)

¶ 42  The second phrase of the anti-abrogation clause, article 18, § 6, provides:

> [T]he ***amount recovered*** shall not be subject to any statutory limitation.

(Emphasis added.)

¶ 43  Before addressing petitioners' argument, we dispense with Denny's contention

that because the protections of article 2, § 31 merely duplicate those of anti-abrogation under article 18, § 6, the non-limitation provisions cannot be violated if there is no abrogation of a common law right. Essentially, Denny's urges us to apply our *Hazine* analysis, heretofore limited to anti-abrogation, to the non-limitation provisions, asking the court to conclude that because the cause of action for wrongful termination in violation of statute-based public policy is not protected by the anti-abrogation clause, it is also not protected by the non-limitation clauses.

■ ¶ 44 While there may be merit to this approach in some contexts,[2] non-limitation under article 2, § 31 is distinct from anti-abrogation in that it protects against limitation of "the amount of damages to be recovered," whereas anti-abrogation speaks to elimination of the "right of action." *See* Roger C. Henderson, *Tort Reform, Separation of Powers, and the Arizona Constitutional Convention of 1910*, 35 Ariz. L.Rev. 535, 618–19 (1993). This may be a fine distinction, but were we not to make it, the non-limitation clauses in most contexts, including the instant cases, would be rendered superfluous or redundant, something we have consistently declined to do. Accordingly, we do not adopt a rigid "right of action" analysis when considering the applicability of article 2, § 31. We conclude, simply, that where dealing with a right to recover damages originating exclusively in a statute, the legislature may, notwithstanding the non-limitation provisions, constitutionally restrict a *remedy* or a *theory of recovery*. The governmental power to do so is more persuasive when the cause of action, as here, is not protected by the anti-abrogation clause. *See generally Jimenez*, 183 Ariz. 399, 904 P.2d 861 (1995); *Register*, 130 Ariz. 9, 633 P.2d 418; *Valley Drive–In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 291 P.2d 213 (1955); *National Sur. Co. v. Conway*, 43 Ariz. 480, 33 P.2d 276 (1933).

■ ¶ 45 It is true we have held that while the statutory cause of action for wrongful death is not protected by article 18, § 6,

once the legislature, by statute, creates the right to bring a damage action, the legislature is prohibited by article 2, § 31 from placing a limitation upon recovery as found in the Worker's Compensation Act. *See Halenar v. Superior Court*, 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972); *see also Smith v. Myers*, 181 Ariz. 11, 14, 887 P.2d 541, 544 (1994) (citing *Halenar*, 109 Ariz. at 29, 504 P.2d at 930). But we have not held that the prohibition is absolute. The constitution does not guarantee a particular amount of damages, *see Jimenez*, 183 Ariz. at 407, 904 P.2d at 869, nor does the constitution protect punitive damages. *See Downs v. Sulphur Springs Valley Elec. Coop.*, 80 Ariz. 286, 292, 297 P.2d 339, 342 (1956).

■ ¶ 46 We have permitted the legislature to regulate a tort action "even though such regulation may—and in a few cases no doubt will—adversely affect the computation of damages that the plaintiff recovers." *Jimenez*, 183 Ariz. at 407, 904 P.2d at 869 (the Uniform Contribution Among Tortfeasors Act abolishing common law joint liability did not violate the Arizona Constitution's anti-abrogation and non-limitation provisions even though the statute would operate to reduce the amount of recovery in many cases). We reasoned that to preclude such regulation would "exclude the legislature from any meaningful enactment because almost any statute dealing with tort actions will affect the amount or potential of recovery." *Id.* at 407–08, 904 P.2d at 869–70. The legislature may, therefore, alter certain recovery schemes as long as an adequate remedy for the injury remains. *See Boswell*, 152 Ariz. at 18–19, 730 P.2d at 195–96.

■ ¶ 47 The question before us is whether petitioners' ACRA-based tort remedies are impermissibly limited by the EPA. We respond in the negative. The EPA restriction pertains to a statutory right not recognized at common law. The right is now vindicated by ACRA's provision for equitable, rather than tort, relief. While the non-limitation clauses prevent limitation of the *amount of damages* that may be recovered,

**2.** In *Jimenez v. Sears, Roebuck and Co.*, 183 Ariz. 399, 407 n. 10, 904 P.2d 861, 869 n. 10 (1995), we noted that the first clause of article 18, § 6 and article 2, § 31 "must be read together and are intended to accomplish the same result."

Similarly, in *Kenyon* we stated that "[i]t is obvious ... that the two provisions [art. 18, § 6 and art. 2, § 31] were intended to guarantee the same basic right." 142 Ariz. at 80 n. 9, 688 P.2d at 972 n. 9.

the EPA restricts only a particular *remedy* or *theory of relief.*

¶ 48 Accordingly, in *Smith, supra,* a common law negligence action for medical malpractice, we held that a statute permitting the defendant to make periodic payments rather than the traditional lump sum payment of the verdict violated the non-limitation clause. We reasoned that the amount of the verdict had been established with certainty, and that while theories of recovery were not in question, we were concerned with insurer solvency, rigid payout schedules regardless of the rate at which expenses were incurred, and a potential windfall for the defendant should the victim die before full payout. *See Smith,* 181 Ariz. at 16–18, 887 P.2d at 546–48. Our decision weighed the effect of two different methods of payment on plaintiff's pre-determined recovery. Conversely, in the employment relationship, overlapping theories of recovery, including breach of contract as well as related tort and statutory claims, make the calculation of damages uncertain. And where, as here, overlapping theories do exist, a restriction on a particular remedy or theory of relief does not offend article 2, § 31.

¶ 49 This court has upheld legislative enactments which regulate a *theory of recovery,* and we have invalidated statutes which place a monetary cap on damages. *See Jimenez,* 183 Ariz. at 407, 904 P.2d at 869. The distinction has thus been made between *theory of recovery* on one hand, and *the amount of damages* on the other. We construe the EPA's exclusive remedy provision as protecting one of several theories of recovery, i.e., ACRA-based equitable relief, rather than the placement of a legislative cap on damages.

¶ 50 Importantly, the EPA does not preclude recovery of compensatory damages under federal law within parameters authorized by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a (1995), as amended,[3] (Title VII), nor does it preclude wrongfully terminated employees from pursuing collateral common law tort claims related to discharge from employment, including intentional infliction of emotional distress, see *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580 (1987), negligent infliction of emotional distress, see *Irvin Investors, Inc. v. Superior Court,* 166 Ariz. 113, 800 P.2d 979 (App.1990), interference with contractual relations, see *Barrow v. Arizona Bd. of Regents,* 158 Ariz. 71, 761 P.2d 145 (App.1988), or defamation, see *Boswell,* 152 Ariz. 9, 730 P.2d 186. Nor does today's decision affect such common law causes of action as assault and battery, fraud, and other protected claims. Significantly, in the case at bar, the legislature, having created a right unprotected at common law, retains much greater liberty in defining the remedy to vindicate that right.

¶ 51 In sum, while the EPA precludes petitioners' ACRA-based claims for compensatory and punitive damages for tortious wrongful discharge, a panoply of constitutionally protected common law tort remedies remains undisturbed as fully beyond the scope of the EPA.

### 4. Equal Privileges Clause

¶ 52 Petitioners contend that the EPA violates the equal privileges clause of the Arizona Constitution, requiring that "[n]o law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const. art. 2, § 13. With the exception of sexual harassment cases, employers with fewer than fifteen employees are exempt from ACRA.

¶ 53 Petitioners make the argument that because the EPA protects large employers (fifteen or more employees) from wrongful discharge tort liability, the employee's sole recourse necessarily depends either on Arizona or federal statutes protecting employees from employer discrimination. They claim that because small employers are exempt from ACRA, their employees are left without any viable ACRA-based claim, and because the EPA eliminates public policy tort claims against employers, they are without any claim and thus victims of unequal treatment. *See* A.R.S. §§ 41–1401 through –1492; 42 U.S.C. § 2000a. Petitioners argue this circumstance violates the equal privileges clause of the constitution.

---

**3.** The Civil Rights Act of 1991 amended Title VII to allow for compensatory, emotional distress, and punitive damages in instances of intentional

discrimination. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (codified at 42 U.S.C. § 1981a (1995)).

¶ 54  Because both employers, Denny's and Calvary, employ more than fifteen workers and are thus subject to ACRA, petitioners are uninjured by the perceived inequality. *See* A.R.S. § 41–1461(2); *see, e.g., Brown v. Ford*, 905 P.2d 223, 228–29 (Okla. 1995). On this record, therefore, we do not reach the equal privileges question because petitioners lack standing to raise it. Determining whether a party has standing has led us to hold that "a person who is not injured by an unconstitutional provision of a statute may not raise an objection as to its constitutionality." *Salinas v. Kahn*, 2 Ariz.App. 181, 193, 407 P.2d 120, 132, *modified on other grounds*, 2 Ariz.App. 348, 409 P.2d 64 (1965). "Constitutional issues will not be determined unless squarely presented in a justiciable controversy...." *School Dist. No. 26 v. Strohm*, 106 Ariz. 7, 9, 469 P.2d 826, 828 (1970).

### 5. Impairment of Contract

¶ 55  Petitioners finally argue that the EPA impairs contractual rights in violation of article 2, § 25 of the Arizona Constitution. Article 2, § 25 provides:

No ... law impairing the obligation of a contract shall ever be enacted.

¶ 56  Neither of the petitioners makes a serious attempt to show that the issue applies to her case. We therefore decline to address the impairment question.

### IV. Conclusion and Disposition

¶ 57  For the reasons set forth, we hold that the preamble to the EPA, though unconstitutional on its face, does not implicate the constitutionality of the statutory text. We further hold that the EPA's exclusive remedies provision restricting tort claims under ACRA violates neither the anti-abrogation clause nor the non-limitation clauses of the Arizona Constitution. We conclude also that petitioners lack standing to assert the claim that the EPA violates the equal privileges clause and that petitioners have failed on this record to demonstrate applicability of the impairment of contracts clause.

¶ 58  The decisions of the trial courts in these cases, consolidated for purposes of review on special action, are affirmed. The parties may pursue further proceedings consistent with this opinion in their respective divisions of the superior court.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, RUTH V. McGREGOR, Justice.