237 P.3d 1052 (2010)
STATE of Arizona, Appellee,
v.
Noel Omar RIOS, Appellant.
No. 1 CA-CR 06-0810.
Court of Appeals of Arizona, Division 1, Department E.
August 12, 2010.
*1054 Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, Robert A. Walsh, Assistant Attorney General, Phoenix, Attorneys for Appellee.
James J. Haas, Maricopa County Public Defender by Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

OPINION
KESSLER, Presiding Judge.
¶ 1 Noel Omar Rios ("Rios") filed an Anders appeal from his convictions and sentences for murder in the second degree, aggravated assault, and discharge of a firearm at a structure. Rios filed a supplemental brief in propria persona arguing, inter alia, that the superior court committed fundamental error by instructing the jury that he had the burden to prove a justification defense despite 2006 Sess. Laws. ch. 199 ("Chap. 199") (shifting the burden of proof on justification defenses to the State). Although the superior court's ruling was correct when made, see Garcia v. Browning, 214 Ariz. 250, 151 P.3d 533 (2007), the Arizona Legislature subsequently gave Chap. 199 retroactive effect. 2009 Ariz. Sess. Laws, ch. 190 ("Chap. 190"). Pursuant to Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we ordered supplemental briefing addressing the retroactivity issue. The State does not contest that Chap. 190 retroactively shifted the burden of proof on this issue to the State and that the statutory amendment applied to this case. The State argues, however, that Chap. 190 violates the separation of powers clause of the Arizona Constitution. Ariz. Const., Art. III.[1] Disagreeing with State v. *1055 Montes, 223 Ariz. 337, 223 P.3d 681 (App. 2009) (review pending), we hold that the operative portion of Chap. 190 does not violate the separation of powers clause. The trial court committed fundamental error by instructing the jury that Rios had the burden of proof on the justification defense. Accordingly, we reverse and remand for a new trial.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 The State charged Rios with first degree murder, aggravated assault, discharge of a firearm at a structure, and assisting a criminal street gang in November 2005. Rios pled not guilty to all charges.
¶ 3 The two victims, Driver (the murder victim) and Passenger (the aggravated assault victim) were driving in the vicinity of Rios's home. Rios testified they pulled their truck in front of Rios's home and had a verbal altercation with Rios's friends and relatives, who were outside the home. Rios stated he noticed the conflict, heard the victims threaten his brother, retrieved and loaded his AK-47, and confronted the victims. Rios fired several rounds at their truck and at least one hit the vehicle, penetrated the truck and severed Driver's spinal cord, which ultimately killed him. The vehicle sped away and crashed, resulting in minor injuries to the Passenger.
¶ 4 Rios testified that not only did he hear the victims threaten to kill his brother, he believed that they would harm his brother, and fired only because he feared that they would use deadly force against him and his family. Rios stated he believed that the victims would become violent because he knew they often carried guns and that they had fired weapons at people on multiple occasions. He also testified they had committed assaults with other deadly weapons, including a baseball bat and a beer bottle, and Rios's brother had already been attacked by the victims numerous times. Rios also stated he knew that the victims had motive to kill on that night because they were seeking revenge for a recent injury to one of their relatives.
¶ 5 Rios's brother testified that he heard one of the victims threaten to shoot him. He also testified that Passenger's hand, which was hanging out the window, appeared to be or was holding a firearm, that the victims regularly carried firearms, and that their reputation for violence in the community caused him to take their threat to kill him seriously.
¶ 6 Another witness bystander testified that the victims threatened to kill someone.[2] He also recounted that during the altercation, the Passenger appeared to reach for a gun.
¶ 7 Rios requested the court to instruct the jury that the State had the burden to disprove the justification defense based upon Chap. 199, amending Arizona Revised Statutes ("A.R.S.") section 13-205 (2003) by requiring the State to disprove justification defenses beyond a reasonable doubt.[3] Rios argued that the amendment applied retroactively to conduct occurring before it became effective. The superior court rejected Rios's argument and determined that the 2006 amendment applied prospectively only. Accordingly, the court instructed the jury that Rios had the burden of proving his justification defenses by a preponderance of the evidence.
*1056 ¶ 8 The case was submitted to the jury on July 25, 2006. The jury convicted Rios of second degree murder, aggravated assault, and discharge of a firearm at a structure. The court sentenced Rios to 23.5 years' incarceration. Rios filed a timely notice of appeal and this Court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2003) and 13-4032(6) (Supp.2008).
¶ 9 While this appeal was pending, the Arizona Supreme Court decided in Garcia that Chap. 199 did not apply to cases in which the underlying conduct was committed before the statutory change took effect, that is before April 24, 2006. 214 Ariz. at 254, ¶ 20, 151 P.3d at 537. The court reasoned that the bill did not contain an express retroactivity provision, so it could apply prospectively only. Id. at 252-53, ¶¶ 9-11, 151 P.3d at 535-36 (citing A.R.S. § 1-244).[4] The court noted that the Legislature could have made Chap. 199 retroactive to cases in which the underlying conduct was committed before April 24, 2006, but did not do so. Id. at 254, ¶ 19, 151 P.3d at 537.
¶ 10 In response to Garcia, in 2009 the Legislature enacted Chap. 190, which provides:
Section 1. Applicability
Laws 2006, chapter 199 applies retroactively to all cases in which the defendant did not plead guilty or no contest and that, as of April 24, 2006, had not been submitted to the fact finder to render a verdict.
Section 2. Purpose
The purpose of this act is to clarify that the legislature intended to make Laws 2006, chapter 199 retroactively applicable to all cases in which the defendant did not plead guilty or no contest and that were pending at the time the bill was signed into law by the governor on April 24, 2006, regardless of when the conduct underlying the charges occurred.

ANALYSIS
¶ 11 On appeal, Rios argues that the superior court's refusal of a burden of proof instruction reflecting the changes made by Chaps. 199 and 190 is fundamental error and that retroactive application of the amendment is within the Legislature's constitutional power.[5] The State argues that Chap. 190, which gave retroactive effect to the statutory amendment in Chap. 199, violates Article III of the Arizona Constitution.
¶ 12 To the extent possible, we avoid deciding constitutional issues if the case can be resolved on non-constitutional grounds. Jeter v. Mayo Clinic Ariz., 211 Ariz. 386, 403 n. 23, 121 P.3d 1256, 1273 n. 23 (App.2005) (citation omitted). We review claims concerning the constitutionality of statutes de novo. State v. Roque, 213 Ariz. 193, 217, ¶ 89, 141 P.3d 368, 392 (2006) (citation omitted). We presume statutes are constitutional, including retroactive statutes. Enterprise Leasing Co. of Phoenix. v. Ariz. Dep't of Rev., 221 Ariz. 123, 125-26, ¶¶ 9, 14, 211 P.3d 1, 3-4 (App.2008) (citation omitted). Additionally, "if part of an act is unconstitutional and by eliminating the unconstitutional portion the balance of the act is workable, only that part which is objectionable will be eliminated and the balance left intact." State v. Watson, 120 Ariz. 441, 452, 586 P.2d 1253, 1264 (1978) (quoting State v. Coursey, 71 Ariz. 227, 236, 225 P.2d 713, 719 (1950)).
[W]here the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to *1057 raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act.
Selective Life Ins. Co. v. Equitable Life Assurance Soc'y, 101 Ariz. 594, 599, 422 P.2d 710, 715 (1967) (citation omitted).
¶ 13 Before turning to the constitutional issue, we first address whether Chaps. 199 and 190 apply to this case and whether any error in instructing the jury was fundamental in nature. Because we answer both of those questions in the affirmative, we then turn to the constitutional issue presented.

I. Chapters 199 and 190 Apply to This Case
¶ 14 To the extent Chap. 190 is constitutional, it makes Chap. 199 applicable to this case. Here, the case had not been submitted to the jury as of April 24, 2006 and Rios had not pled guilty or no contest.

II. Any Instructional Error Was Fundamental
¶ 15 On this record, the improper burden of proof instruction went to the foundation of the case and caused Rios prejudice. See State v. Henderson, 210 Ariz. 561, 567, ¶ 20, 115 P.3d 601, 607 (2005). Generally, a jury instruction improperly shifting the burden of proof goes to the foundation of a case. Id. at 568, ¶ 25, 115 P.3d at 608 (holding erroneously instructing the jury on burden of proof fundamental error); State v. Hunter, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984) (finding fundamental error when "[t]he [jury] instructions did not make it clear that appellant's burden as to self-defense was limited to raising a reasonable doubt and that the burden of the state was then to disprove beyond a reasonable doubt that appellant acted in self defense").
¶ 16 In this case, that holding is especially apt. A fair reading of the record indicates that the primary trial issue was the applicability of justification defenses, for which the defendant presented substantial evidence. Given the quantum of evidence involved, including testimony by the defendant and multiple corroborating witnesses supporting his justification defense, we think there is a substantial probability that the burden of proof instruction impacted the verdict. See Henderson, 210 Ariz. at 569, ¶ 27, 115 P.3d at 609 (holding that an error is prejudicial when it could have impacted the verdict). Therefore, we hold that Rios is entitled to relief under the fundamental error standard if Chap. 190 is constitutional.

III. Chapter 190 is an Exercise of the Legislature's Constitutional Power to Retroactively Grant Relief From Criminal Punishment
¶ 17 This appeal comes to us on unique grounds. Generally, the Legislature has the power to retroactively apply a statute granting criminal defendants a more lenient burden of proof on justification. Garcia, 214 Ariz. at 254, ¶ 19, 151 P.3d at 537 ("[N]othing in the United States Constitution or the Arizona Constitution prohibits applying Senate Bill 1145 [Chap. 199] to defendants who committed their offenses before the effective date of the amendments."); see also Enterprise, 221 Ariz. at 126, ¶ 14, 211 P.3d at 4 (holding that even retroactive statutes are entitled to the presumption of constitutionality); 73 Am.Jur.2d. Statutes § 244. In contrast, as discussed more fully below, once the supreme court has rendered a final judgment interpreting a substantive statute, the Legislature cannot later retroactively construe what the statute meant in conflict with the judicial decision. Here, however, the issue presented is whether, after the supreme court has declared that a legislative act was not intended to apply retroactively, the Legislature may act to make the law retroactive without violating separation of powers principles. We hold that when the substantive legislative purpose is not to overrule a judicial decision or to preclude judicial decision-making, but to exercise its right to make a law retroactive, the Legislature may do so without violating separation of powers, provided such an amendment does not retroactively narrow or limit a criminal defendant's rights or disturb vested rights.

A. Underlying Principles and Test for Separation of Powers
¶ 18 While separation of powers is "explicitly and firmly expressed" under *1058 Arizona law, Chavez v. Brewer, 222 Ariz. 309, 315, ¶ 16, 214 P.3d 397, 403 (App.2009) (quoting Mecham v. Gordon, 156 Ariz. 297, 300, 751 P.2d 957, 960 (1988)), separation of powers is not absolute, but rather allows for common boundaries among the three branches of government. State v. Prentiss, 163 Ariz. 81, 84-85, 786 P.2d 932, 935-36 (1989); accord State ex rel. Woods v. Block, 189 Ariz. 269, 276, 942 P.2d 428, 435 (1997) (stating test for separation of powers doctrine provides "`the necessary flexibility to government,' yet `preserves the essential goal of the separation of powers theory,' to prevent `the concentration of the whole power of two or more branches in one body.'") (citation omitted); Cactus Wren Partners v. Dept. of Bldg. & Fire Safety, 177 Ariz. 559, 562, 869 P.2d 1212, 1215 (App.1993) (holding separation of powers doctrine does not require an absolute separation among the three branches of government but allows some blending of authority). The ultimate goal of Article III is to ensure that one branch of government does not encroach upon or usurp the functions properly belonging to another branch. Phoenix Newspapers, Inc. v. Superior Court, 180 Ariz. 159, 163, 882 P.2d 1285, 1289 (App.1993) (encroachment); Woods, 189 Ariz. at 276, 942 P.2d at 435 (usurping functions) (citation omitted); see also Prentiss, 163 Ariz. at 85, 786 P.2d at 936 (holding that policy of Article III is to protect one branch of government from overreaching of another branch) (citation omitted); State v. Dykes, 163 Ariz. 581, 583, 789 P.2d 1082, 1084 (App.1990) (stating goals are to preserve individual liberty against improper aggrandizement of power by one branch of government and assist orderly performance of various functions of government).
¶ 19 When it comes to evaluating the checks and balances provided by separation of powers between the legislative and judicial branches, we look to see whether the legislative act "`unreasonably limits or hampers' the judicial system in performing its function." Prentiss, 163 Ariz. at 84, 786 P.2d at 935 (citation omitted). The Legislature has the exclusive power to declare what the law shall be and usurps the function of the judiciary only when it declares the meaning of an existing law. Id. at 85, 786 P.2d at 936 (citation omitted). In contrast, the judicial power (other than in rule-making) is to apply the law and determine if legislation runs contrary to constitutional guarantees or is arbitrary and unreasonable. Id.; Dykes, 163 Ariz. at 583, 789 P.2d at 1085 (holding once criminal charge is brought, judicial role is to dispose of that charge) (citation omitted); see also Phoenix Newspapers, 180 Ariz. at 163, 882 P.2d at 1289 (discussing rule-making power of the supreme court).
¶ 20 To implement these goals, we evaluate separation of powers claims by examining "(1) the essential nature of the power being exercised; (2) the Legislature's degree of control in exercising the power; (3) the Legislature's objective; and (4) the practical consequences of the action." San Carlos Apache Tribe v. Superior Court, 193 Ariz. 195, 211, ¶ 37, 972 P.2d 179, 195 (1999); accord Woods, 189 Ariz. at 276, 942 P.2d at 435.

B. Application of the Test to Chap. 190
¶ 21 Applying the above test, we hold that Chap. 190 did not usurp or encroach upon judicial functions by making the new burden of proof retroactive. First, the essential nature of the power at issue here is legislative. The Legislature has plenary power to determine what conduct is criminal. State v. Ramsey, 171 Ariz. 409, 413, 831 P.2d 408, 412 (App.1992). Moreover, determining the burden of proof is a substantive decision and the Legislature's decision on that prevails over prior common-law decisions. Seisinger v. Siebel, 220 Ariz. 85, 92, ¶¶ 27-28, 203 P.3d 483, 490 (2009) (holding while courts make law through the development of the common law, judicially developed substantive principles are subordinated to contrary acts adopted by the legislature; "when a substantive statute conflicts with the common law, the statute prevails under a separation of powers analysis.") (citations omitted); see also Valerie M. v. Ariz. Dep't of Econ. Sec., 219 Ariz. 331, 336, ¶ 21, 198 P.3d 1203, 1208 (2009) ("Because the legislature is empowered to set burdens of proof as a matter of substantive law, a valid statute specifying the burden of proof prevails over common law or court rules adopting a different standard.") *1059 (citation omitted); City of Phoenix v. Johnson, 220 Ariz. 189, 192, ¶¶ 13-14, 204 P.3d 447, 450 (App.2009) (holding courts cannot enact substantive law, which is left to prerogative of the legislature; a valid statute specifying burden of proof prevails over common law or court rules) (citations omitted). Chap. 190 decriminalizes all conduct defined by Arizona's justification defenses and shifts the burden of proof on justification defenses if the case was submitted to a fact-finder after April 24, 2006. In the substantive portion of Chap. 190, the Legislature did not declare that Chap. 199 as passed in 2006 was retroactive, which would have been declaring the meaning of an existing law. Prentiss, 163 Ariz. at 85, 786 P.2d at 936. Rather, just as it exercised its right to declare the burden of proof in Chap. 199, it exercised its prerogative to make the law retroactive by passing Chap. 190.
¶ 22 Second, the limited nature of the Legislature's enactment of Chap. 190 weighs in favor of not finding a separation of powers violation. A statute that leaves the judiciary free to make its own determination based on the particular facts of a case comports with separation of powers. Phoenix Newspapers, 180 Ariz. at 164, 882 P.2d at 1290; see also San Carlos, 193 Ariz. at 212, ¶ 39, 972 P.2d at 196 (finding legislative act took control of judicial proceeding by depriving the superior court of its power to hear evidence and determine facts). The Legislature retroactively decriminalized certain conduct and altered the relevant burden of proof, but left the judiciary substantial power to determine whether the newly defined defense applies, including whether the use of force was reasonable under the circumstances. Therefore, this factor weighs in favor of finding that the Legislature has not violated separation of powers.
¶ 23 Third, the Legislature's objective in Chap. 190 is mixed. By making Chap. 199 retroactive, the Legislature did not seek to take over a judicial function, but to decriminalize particular conduct and shift the burden of proof, a legislative prerogative. The key question in determining the legislative objective is whether the Legislature is attempting to exert control over another branch of government. Woods, 189 Ariz. at 277, 942 P.2d at 436. We look first to the operative legislative provisions in evaluating this factor. Id. In Chap. 190, the operative language of Section One decriminalizes conduct and alters the burden of proof in cases implicating justification defenses if the case had not been submitted to the fact-finder before the effective date of the act. At the same time, Section Two of Chap. 190 states that the Legislature's purpose is to clarify a prior law, in essence saying that its original intent was to have Chap. 199 apply retroactively, contrary to the holding in Garcia. As we discuss infra, part III.C, Section Two is not the operative provision, so we give it less weight in determining legislative intent than Section One, which is the express operative term of the statute. See Cronin v. Sheldon, 195 Ariz. 531, 537-38, ¶¶ 25-32, 991 P.2d 231, 237-38 (1999). As we also discuss in part III.C, even if we were to find Section Two of Chap. 190 unconstitutional, it does not require us to invalidate the operative portion of that law.
¶ 24 The fourth factor is the practical impact of the particular act, if any is observable. As Chap. 190 is relatively new, we have little hard data on its impact. Its effect is limited because it only applies to cases in which the defendant did not plead guilty or no contest and that, as of April 24, 2006, had not been submitted to the fact-finder to render a decision. Moreover, we note that Arizona Rule of Criminal Procedure 32.1(g) has permitted a defendant to receive relief from a conviction based on retroactive statutory amendments for some time, and we are not aware of any evidence that the Legislature's general exercise of that power has placed any undue burden on the judiciary. Although, as in this case, the new law may result in a slightly increased caseload for our trial courts, we do not think the effect will be so crippling as to render the law an unconstitutional encroachment on the judicial power.
¶ 25 Our conclusion is supported by common sense. When the Supreme Court decided Garcia, it concluded the legislature had not meant to make Chap. 199 retroactive. There is nothing in Garcia that hints the court was telling the Legislature that at no time in the future could the Legislature *1060 make Chap. 199 retroactive. Indeed, if the court had attempted to restrict the Legislature from ever making Chap. 199 retroactive simply because the court had concluded that Chap. 199 was not retroactive when passed, such a decision in itself would raise separation of powers issues of whether the judiciary was encroaching on the Legislature's prerogative to decide to make the law retroactive.
¶ 26 This does not mean that the Legislature has free reign to make any law retroactive. In contrast to this case, Arizona cases striking down laws based on their retroactivity have also involved enforcing another constitutionally protected right (such as protecting a vested interest) which was infringed upon by the retroactive law. For example, in San Carlos Apache Tribe, the supreme court struck down a retroactive statute because retroactive application would have divested parties of rights vested prior to its enactment. 193 Ariz. at 204-09, ¶¶ 12-29, 972 P.2d at 188-93. Similarly, State v. Murray struck down a retroactive statute because it restricted the defendant's vested right to parole eligibility. 194 Ariz. 373, 374-75, ¶ 6, 982 P.2d 1287, 1288-89 (1999).[6] Unlike the statutes involved in those cases, retroactive application of Chap. 199 does not interfere with the defendant's rights, it expands them.[7]
¶ 27 The State has not argued that Rios's conviction is a vested right guaranteed to it by any part of the Arizona or federal constitutions, and we have found no authority supporting such a contention. See Adrian Vermuele, The Judicial Power in the State (and Federal Courts) 2000 Sup. Ct. Rev. 357, 382 (2001) ("[C]riminal sentences are, of all judicial judgments, the most susceptible to revision by the political branches, so long as the revision operates in the prisoner's favor.")
¶ 28 The policy underlying Arizona Rule of Criminal Procedure 32.1(g) confirms that the State has no vested rights in a criminal conviction. Rule 32.1(g) allows a defendant to receive relief from a conviction if he is entitled to benefit from a retroactive change in the law, including retroactive statutory amendments. See State v. Shrum, 220 Ariz. 115, 119, ¶ 17, 203 P.3d 1175, 1179 (2009) (citing State v. Jensen, 193 Ariz. 105, 107, ¶ 13, 970 P.2d 937, 939 (App.1998)). Because legislative acts occurring after a conviction may entitle a defendant to Rule 32 relief, we conclude that criminal convictions give the State no vested right immune from modification by the Legislature.

C. Section Two of Chap. 190 Is Not Fatal to the Entire Act
¶ 29 The State argues that Chap. 190 violates separation of powers because its stated purpose is to interpret existing law. We disagree. Although we agree that the purpose *1061 stated in Section Two of Chap. 190 could be unconstitutional, we do not view that as fatal to the statute. The statute as a whole may be saved by severing Section Two and leaving the operative provision in Section One intact.
¶ 30 "As a general matter, the separation of powers doctrine leaves creation of future statutory law to the legislative branch and determination of existing law and its application to past events to the judicial branch." Cook v. Cook, 209 Ariz. 487, 494, ¶ 24 n. 7, 104 P.3d 857, 864, n. 7 (App.2005) (quoting Murray, 194 Ariz. at 375, ¶ 9, 982 P.2d at 1289). However, Arizona courts have long recognized a limited exception permitting the Legislature to clarify an ambiguous statute with a later act. City of Mesa v. Killingsworth, 96 Ariz. 290, 297, 394 P.2d 410, 415 (1964). This exception is limited to cases in which the statute itself is ambiguous. Fell, 210 Ariz. at 560-61, ¶ 25, 115 P.3d at 600-01; Circle K Stores, Inc. v. Apache County, 199 Ariz. 402, 409, ¶ 22, 18 P.3d 713, 720 (App.2001) (citing Weekly v. City of Mesa, 181 Ariz. 159, 163, 888 P.2d 1346, 1350 (App.1994)).
¶ 31 Whether a statute is ambiguous and subject to legislative clarification depends not only on the text of the statute, but on the existence of clear precedent construing the statute. Fell, 210 Ariz. at 561, ¶ 25, 115 P.3d at 601. Once the Arizona Supreme Court interprets a statute, the interpretation becomes part of the statute. Id. (citing Galloway v. Vanderpool, 205 Ariz. 252, 256, ¶ 17, 69 P.3d 23, 27 (2003)). Even if a statute is ambiguous when enacted, once a judicial interpretation clarifies it, the statute is no longer ambiguous and the Legislature may not clarify its intent. Id.
¶ 32 Accordingly, if Chap. 190, Section Two were an attempt to clarify Chap. 199, it would violate separation of powers by attempting to interpret or construe an existing law in a fashion contrary to the Arizona Supreme Court's construction. Section Two states that its "purpose ... is to clarify that the legislature intended to make Laws 2006, chapter 199 retroactively applicable to all cases ... pending at the time the bill was signed into law by the governor on April 24, 2006, regardless of when the conduct underlying the charges occurred." Regardless of whether Chap. 199 was ambiguous when written, it ceased to be ambiguous once the Supreme Court interpreted it in Garcia. Fell, 210 Ariz. at 561, ¶ 25, 115 P.3d at 601.
¶ 33 However, for two reasons, Section Two of Chap. 190 does not render Section One unconstitutional. First, we view Section Two as no more than a legislative comment on Garcia, rather than an attempt to clarify the Legislature's intent in Chap. 199. As such, it is superfluous to our separation of powers analysis. Second, even if Section Two stated an unconstitutional purpose, we have a duty to sever unconstitutional provisions from otherwise constitutional laws when possible. Watson, 120 Ariz. at 452, 586 P.2d at 1264 (citing Coursey, 71 Ariz. at 236, 225 P.2d at 719). In Cronin, the Arizona Supreme Court gave effect to the Employment Protection Act notwithstanding a finding that its preamble was unconstitutional. 195 Ariz. at 537-38, ¶¶ 25-32, 991 P.2d 231 at 237-38. Cronin rejected the contention that "because a legislative preamble sets forth notions repugnant to the constitution, the operative legislation itself is necessarily invalid." Id. at ¶ 28. Cronin relied on the rule "that where an unambiguous operative statutory section conflicts with the purpose or policy section of a statute, the operative section controls." Id. at 538, ¶ 29, 991 P.2d at 238 (citing Foremost Life Ins. Co. v. Trimble, 119 Ariz. 222, 226, 580 P.2d 360, 364 (App.1978)). Although Section Two is not a preamble, at most it sets forth the purpose of the act and contains no operative language. Therefore, as in Cronin, we enforce the operative part of the statute notwithstanding any unconstitutional purpose stated in Section Two.
¶ 34 Our conclusion that Chap. 190 does not violate the test for separation of powers is supported by Enterprise, 221 Ariz. at 129, ¶ 29, 211 P.3d at 7. As we explained there, in the criminal context the Legislature cannot use a clarification to retroactively overrule a court decision. Id. Here, the Legislature did not overrule Garcia in passing the operative section of Chap. 190. Rather, the substantive *1062 provision of Chap. 190 recognized that our supreme court had determined Chap. 199 had not been meant to apply retroactively and the Legislature merely decided to expressly make it apply retroactively.

D. State v. Montes

¶ 35 In Montes, another panel of this Court held that Chap. 190 violates separation of power principles. 223 Ariz. at 340, ¶ 15, 223 P.3d at 684. In reaching that conclusion, the court reasoned that: (1) Under Murray, the Legislature cannot seek to overturn a prior judicial decision by amending a law to make it retroactive, as Chap. 190 sought to do with Garcia, 223 Ariz. at 339-40, ¶¶ 10-12, 223 P.3d at 683-84; and (2) Chap. 190, like the statutory amendment in Murray, changed the statute as interpreted by the supreme court and thus was an attempt by the Legislature to adjudicate pending cases by defining existing law and applying it to facts. Id. at 340, ¶ 13, 223 P.3d at 684. We disagree for several reasons.
¶ 36 First, this case is not like Murray. As explained in Montes, Murray dealt with a retroactive amendment to sentencing statutes to allow a court to apply flat time sentences in a pending case when the supreme court had already held in State v. Tarango, 185 Ariz. 208, 212, 914 P.2d 1300, 1304 (1996), that such flat time sentences could not be applied. Montes, 223 Ariz. at 339, ¶¶ 9-10, 223 P.3d at 683. Tarango did not deal with an issue of whether a statutory amendment was retroactive. In contrast, Garcia only dealt with whether Chap. 199, as written, was meant to be retroactive. The court held that it was not retroactive but that no constitutional principle precluded the Legislature from having it apply retroactively if it had intended to do so. In Section One of Chap. 190, the operative section, the Legislature merely decided to make Chap. 199 retroactive. Moreover, as we note above, Murray dealt with an amendment limiting the vested rights of a criminal defendant retroactively, supra, ¶ 26 and n. 6, which is not occurring here.
¶ 37 Second, as we note supra, part III.C, we agree with Montes that to the extent Section Two of Chap. 190 is interpreted as an attempt to clarify the legislative intent of Chap. 199, it would be invalid under separation of powers theory. Montes, 223 Ariz. at 340, ¶ 13, 223 P.3d at 684. However, even if we read Section Two in such a manner, as we also discuss in part III.C, it is severable from Section One, and thus does not invalidate Section One. In any event, we view Section Two as merely a superfluous comment on the supreme court's opinion in Garcia because the clear purpose of Chap. 190 was accomplished by Section One of that act.
¶ 38 Third, the effect of Montes is to interpret Garcia as forbidding the Legislature from at any point in the future making Chap. 199 retroactive. We cannot read that intent into Garcia and any such effect would itself raise separation of powers issues.

IV. Federal Separation of Powers Principles
¶ 39 Finally, we address one federal principle of separation of powersthe prohibition of a legislative prescription of a rule of decision in a pending judicial matterto determine whether Chap. 190 violates that principle. We address that one principle of federal analysis because it has been applied by our supreme court in interpreting Article III, San Carlos, 193 Ariz. at 210, ¶ 33, 972 P.2d at 194, and appears to be related to part of the holding in Montes, 223 Ariz. at 340, ¶ 13, 223 P.3d at 684 (Chap. 190 is legislative attempt to adjudicate pending cases by defining existing law and applying it to fact).[8]
*1063 ¶ 40 United States v. Klein, 80 U.S. (13 Wall.) 128, 146, 20 L.Ed. 519 (1871), is the source of the prohibition against prescribing rules for decision in pending cases. Klein was issued in the wake of United States v. Padelford, in which the Supreme Court held that a person accepting a presidential pardon for acts committed in support of the Confederacy was entitled to restoration of property under a prior act of Congress granting that right to all persons who had not aided in the rebellion. 76 U.S. (9 Wall.) 531, 542-43, 19 L.Ed. 788 (1869). Congress responded by passing a retroactive statute prohibiting a pardoned person from presenting the pardon as evidence in favor of a claim for restoration of property, terminating Supreme Court jurisdiction to review decisions in which such pardons were considered, and requiring that the pardon be construed as conclusive evidence that the person pardoned had aided the Confederacy, rendering him ineligible for restoration of property. Klein, 80 U.S. (13 Wall.) at 143-44. Klein struck down the amendment, holding that Congress's "great and controlling purpose is to deny to pardons granted by the President the effect which this court had adjudged them to have." Id. at 145. The Court condemned a requirement that courts make particular factual findings whenever a particular piece of evidence is presented, and articulated the oft-quoted rule against legislative prescription of rules of decision in pending cases:
[T]he denial of jurisdiction ... is founded solely on the application of a rule of decision, in causes pending, prescribed by Congress. The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause.
It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.... What is this but to prescribe a rule for the decision of a cause in a particular way? ... Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it? We think not.... We must think that Congress has inadvertently passed the limit which separates the legislative from the judicial power.
Id. at 146.
¶ 41 Thus, the act of Congress condemned in Klein violated separation of powers by directly tying the admission of a particular kind of evidence to the result in a case without any room for judicial fact-finding and inhibiting the judiciary's ability to determine the scope of a preexisting legal right. 80 U.S. (13 Wall.) at 145-46. Chap. 190 does not amount to a rule of decision because it only made Chap. 199 retroactive to certain cases and courts in those cases are not precluded from fact-finding and determining the scope of a preexisting right.
¶ 42 Since Klein, the Court has distinguished and exempted from its holding cases in which a statute creates a new right and leaves the judiciary free to determine the effect of the statute and engage in fact-finding. Thus, in Pope v. United States, 323 U.S. 1, 9-10, 65 S.Ct. 16, 89 L.Ed. 3 (1944), the petitioner sought payment in the Court of Claims for labor performed for the government. Id. at 5, 65 S.Ct. 16. The Court of Claims denied the petitioner's claim. Id. Congress then passed a special act directing that the Court of Claims pay the petitioner at his contract rate for work performed. Id. at 6-7, 65 S.Ct. 16. The Court of Claims held that the act overturned its prior decision and prescribed a rule for the decision in violation of Klein. Id. at 7-8, 65 S.Ct. 16. The Supreme Court disagreed and held that the *1064 act did not overrule the Court of Claims but created a new right for the petitioner. Id. at 9, 65 S.Ct. 16. Because Congress had created a new right based on prior conduct, the prior judicial treatment of the petitioner's prior right remained undisturbed and Congress did not violate separation of powers. Id. The Court also explained that Congress had not violated separation of powers because the Court of Claims retained the power to interpret the new legislation and to engage in evidence-based fact-finding. Id. at 11-12, 65 S.Ct. 16.
¶ 43 Similarly, in United States v. Sioux Nation of Indians, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), the petitioners had filed a claim for compensation in the Court of Claims for the taking of tribal lands in violation of a treaty between the United States and the tribe. Id. at 384, 100 S.Ct. 2716. The Court of Claims dismissed the matter, finding that it was not authorized to reach the merits of the claim. Id. Congress passed a new act creating the Indian Claims Commission and the petitioners filed their claim again. Id. at 384-85, 100 S.Ct. 2716. The Commission determined that Congress's seizure of tribal land in violation of a prior treaty was a taking and ordered just compensation pursuant to the Fifth Amendment. Id. at 386, 100 S.Ct. 2716. On appeal to the Court of Claims, the United States successfully argued that a portion of the claim was barred by res judicata and collateral estoppel because of the prior unsuccessful action that the petitioners had filed. Id. at 387-88, 100 S.Ct. 2716. Congress subsequently enacted a statute requiring the Court of Claims to "review the merits of the Indian Claims Commission's judgment ... without regard to the defenses of res judicata and collateral estoppel." Id. at 389, 100 S.Ct. 2716. The Court of Claims was authorized to take new evidence and review the merits of the Indian Claims Commission's judgment de novo. Id. The Court of Claims ruled in favor of the petitioners, and the Supreme Court granted the United States' petition for certiorari. Id. at 390, 100 S.Ct. 2716.
¶ 44 Although the United States conceded that the post-judgment statutory waiver of defenses did not violate Klein or its progeny, the Supreme Court considered the issue sua sponte and reached the same conclusion. Id. at 391-94, 100 S.Ct. 2716. The Court held that the statute did not violate separation of powers because it created a "new legal right" rather than bringing into question the finality of the prior judicial determination or prescribing the outcome of the Court of Claims' review of the merits. Id. at 406-07, 100 S.Ct. 2716. Sioux Nation distinguished Klein on the grounds that the statute in Klein deprived an individual of rights granted in a presidential pardon, while the statute in Sioux Nation granted rights to a litigant at Congress's expense. Id. at 405, 100 S.Ct. 2716. Additionally, Sioux Nation repeatedly relied on the fact that the statute it was evaluating left the judiciary with broad freedom to decide the case based on its own view of the facts, while the statute invalidated in Klein went so far as to "prescribe the outcome" of a case with no room for judicial judgment. Id. at 405-07, 100 S.Ct. 2716.
¶ 45 More recently, the Court ruled that Klein does not apply when Congress merely amends applicable law. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (citing Robertson v. Seattle Audubon Soc., 503 U.S. 429, 441, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992)). In Plaut, the Court struck down the retroactive amendment to a federal law because it amended the statute of limitations and attempted to reopen a case that had been dismissed on grounds of untimeliness and then never appealed. Id. at 218-19, 115 S.Ct. 1447. In contrast, the Court held that "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." Id., 514 U.S. at 226, 115 S.Ct. 1447 (citation omitted).
¶ 46 Finally, in Miller v. French, the Court analyzed Klein's language and distinguished cases in which Congress merely changes the applicable legal standard. 530 U.S. 327, 349, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). In Miller, Congress had passed a statute amending the standard for injunctive relief in cases addressing prison conditions *1065 and applied that to any future prospective relief, including existing injunctions. As part of that legislation, Congress provided that, absent good cause, a motion to lift the injunction would act as an automatic stay of continued relief beginning thirty days after a motion to terminate relief was filed until the court had ruled on the motion. Id. at 333-34, 120 S.Ct. 2246. Prisoners who had previously been awarded injunctive relief were faced with a motion to vacate that relief, subject to the automatic stay. At issue was whether the automatic stay violated separation of powers by precluding Article III courts from exercising their discretion to enjoin operation of the automatic stay provision. Id. at 334-36, 120 S.Ct. 2246. A lower court held that the automatic stay provision violated separation of powers because it prescribed a rule of decision. Id. at 335, 120 S.Ct. 2246. In reversing, the Court held that the law did not violate Klein by mandating a rule of decision because, "[w]hatever the precise scope of Klein ... later decisions have made clear that its prohibition does not take hold when Congress amend[s] applicable law." 530 U.S. at 349, 120 S.Ct. 2246 (citations and internal quotation marks omitted). The Court explained that "[r]ather than prescribing a rule of decision, [the stay provision] simply imposes the consequences of the court's application of the new legal standard." Id.
¶ 47 Thus, while the legislative act in Klein violated separation of powers by dictating that the introduction of evidence of a pardon mandated a particular result regardless of what the evidence was, the act in Miller did not violate separation of powers because the judiciary could still enter any judgment, so long as it made appropriate findings required by the new legal standard. Id. The distinction between a statute that prescribes a rule of decision and one that merely changes the applicable legal standard is the degree of freedom that courts retain to make findings. When a statute creates a rule directly linking a particular kind of evidence to a particular result, the judicial fact-finding function is effectively eliminated. When a statute alters the legal consequences flowing from a particular set of facts, the act is within the scope of legislative power, although it may be otherwise invalid as a violation of due process or the ex post facto clause.
¶ 48 Arizona cases applying the rule of decision theory are similarly limited. San Carlos was the first Arizona case to rely on Klein in separation of powers jurisprudence. 193 Ariz. at 210, ¶ 33, 972 P.2d at 194. In San Carlos, the Arizona Supreme Court relied on Klein to condemn a legislative act that attempted to "adjudicate pending cases" by both "defining existing law and applying it to fact." Id. at ¶ 34.
¶ 49 The statutes involved in San Carlos, however, are a far cry from Chap. 190. One of the statutory provisions struck down in San Carlos was a statute requiring that certain uses of water "shall be deemed" de minimis and mandating that a particular judgment be entered in all such cases. Id. at 211, ¶ 35, 972 P.2d at 195.[9] The practical effect of the amendment was to "remove all possibility of meaningful judicial conclusions based on findings of fact. This the Legislature cannot do." Id. at 196, ¶ 40, 972 P.2d at 212 (citing Klein, 80 U.S. (13 Wall.) at 146-48). San Carlos struck down several other statutory provisions that either required the superior court to make particular factual determinations or to absolutely accept the credibility of particular kinds of evidence. Id. at 196-98, ¶¶ 41, 42, 44, 48, 972 P.2d at 212-14.[10]
¶ 50 Moreover, while the reasoning in Montes also relied in part on the prohibition of a legislative prescription of a rule of decision, 223 Ariz. at 340, ¶ 13, 223 P.3d at 684, as we explained supra, part III.D, Section One of Chap. 190 is merely a legislative decision to make Chap. 199 retroactive. Additionally, Section Two is either a mere comment *1066 on Garcia or is severable from Section One.
¶ 51 The rule against legislative prescription of rules of decision in pending cases does not require that we find Chap. 190 unconstitutional. Unlike the statutes rejected in Klein and San Carlos, Chap. 190 does not limit any court's ability to weigh evidence or mandate any particular finding of fact based on particular evidence. See Klein, 80 U.S. (13 Wall.) at 146; San Carlos, 193 Ariz. at 210-11, ¶¶ 33-34, 972 P.2d at 194-95. Nor does it interfere with this Court's power to interpret existing law. Rather, this law creates a new right based on prior conduct, just as the laws that were upheld in Pope, Sioux Nation, and Miller. Chap. 190 does not prescribe a rule of decision. It merely shifts the burden of proof on prior cases in favor of defendants. The fact-finding function of the judiciary is left intact. As such, the substantive provision of Chap. 190 is a valid exercise of the Legislature's power to retroactively grant new rights to criminal defendants, Garcia, 214 Ariz. at 254, ¶ 19, 151 P.3d at 537, not a prescription of a rule of decision.

CONCLUSION
¶ 52 For the foregoing reasons, we hold that Chap. 190 is a valid exercise of the Legislature's power to retroactively grant rights to criminal defendants and does not violate the separation of powers clause. We reverse Rios's conviction and sentence and remand for further proceedings consistent with this opinion.
CONCURRING: LAWRENCE F. WINTHROP and SHELDON H. WEISBERG, Judges.
NOTES
[1] Article III of the Arizona Constitution provides: "The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others."
[2] While that witness had not told one of the investigating officers that fact, he did apparently tell another investigator about that threat.
[3] Prior to Chap. 199, section 13-205(A) provided in pertinent part: "Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence, including any justification defense...." Chap. 199 amended 13-205(A) to read in pertinent part: "Except as otherwise provided by law, a defendant shall prove any affirmative defense raised by a preponderance of the evidence. Justification defenses ... are not affirmative defenses... [but] describe conduct that, ... if justified, does not constitute criminal or wrongful conduct. If evidence of justification ... is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification." Governor Napolitano signed Chap. 199 into law on April 24, 2006. It took effect immediately upon her signature because the law contained an emergency clause.
[4] For purposes of determining retroactivity, the court stated that the operative event is generally the date of the offense when a new statute regulates primary conduct. Id. at 253, ¶ 14, 151 P.3d at 536. The court held that Chap. 199 regulates primary conduct and not merely the conduct of the trial because the amendment made justified conduct not criminal, thus altering the legal consequences that attached to conduct at the time it was committed. Id. Moreover, the amendment would affect police investigations and charging decisions. Id.
[5] Because we grant Rios relief under the fundamental error standard, we need not consider the claim in Rios's simultaneous brief that the erroneous jury instruction is subject to harmless error analysis. We also grant Rios's motion for leave to file a reply to the State's simultaneous brief.
[6] Some language in Murray appears to limit the Legislature's power to legislate retroactively, however, the context of that language indicates that it only applies in cases where retroactive application would impair substantive rights. Murray states that the Legislature may not "`change the legal consequence of events completed before [a] statute's enactment.'" 194 Ariz. at 375, ¶ 6, 982 P.2d at 1289 (quoting San Carlos, 193 Ariz. at 205, 972 P.2d at 189). The quoted language comes from San Carlos' discussion on due process. Murray, however, impliedly assumes that parole eligibility is a substantive right which vests at the time a crime occurs. Id. Notwithstanding the breadth of the language in one sentence of Murray, its context reveals that it only applies to retroactive acts which would abrogate vested rights.
[7] Nor do State v. Fell, 210 Ariz. 554, 115 P.3d 594 (2005), or State v. Rodriquez, 153 Ariz. 182, 735 P.2d 792 (1987), support the State's contention that Chap. 190 is unconstitutional. The issue in Fell was whether the Legislature could retroactively amend sentencing statutes to permit a court to apply more aggravating facts in a case which arose before the amendment and to overrule an Arizona Supreme Court case limiting the aggravators which could be applied under the law in effect at the time of the crime. 210 Ariz. at 556-57, ¶¶ 4-7, 115 P.3d at 596-97. The supreme court held, in part, that the statutory amendment was not a mere clarification of the prior statute, citing Murray for the proposition that a retroactive amendment could not be used to abrogate a prior case interpreting the statute. Id., 210 Ariz. at 560, ¶¶ 24-25, 115 P.3d at 600. Here, in contrast, the Legislature did not abrogate Garcia, which held that Chap. 199 was not retroactive; rather in Chap. 190 the Legislature merely decided to make Chap. 199 retroactive. In Rodriquez, the court held that separation of powers did not permit the court to accept legislative messages regarding past legislative acts. 153 Ariz. at 187, 735 P.2d at 797. It is clear that the Legislature meant to make Chap. 199 retroactive by passing Chap. 190, regardless of what its intent was originally in passing Chap. 199.
[8] As it applies to the judiciary, federal separation of powers doctrine arises out of Article III, Section 1 of the United States Constitution. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). That section provides, in pertinent part that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." See also Miller v. French, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (holding that separation of powers doctrine arises out of articles I, II and III of the United States Constitution and "prohibits one branch from encroaching on the central prerogatives of another.")

The Supreme Court explained in Plaut, that separation of power violations as they relate to the judicial branch are of three types: legislative prescription of rules of decisions; legislative authorization of executive review of judicial decisions; and legislatively commanding courts to retroactively reopen final judgments. 514 U.S. at 218-19, 225-27, 115 S.Ct. 1447. The second type does not apply here. Nor is the third type of violation present here because this case is on direct appeal. Plaut explained that while a retroactive statutory amendment can violate separation of powers if it prescribes what the law was at an earlier time and seeks to reopen a case which is final, that rule does not apply when the case at issue is still on direct appeal. Id. at 227, 115 S.Ct. 1447; see also Miller, 530 U.S. at 344, 120 S.Ct. 2246 (explaining that Plaut prohibited a retroactive statute requiring the reopening of a final judgment).
[9] The prior law had been that the trial court could develop a rationally based exclusion from the prior appropriation system for wells having a de minimis effect on surface water. Id.
[10] By contrast, San Carlos dealt with retroactive amendments to the statutory law governing prior appropriation as due process violations rather than separation of powers violations, because they impaired existing vested rights. 193 Ariz. at 204-09, ¶¶ 12-28, 972 P.2d at 188-93.